RICHARD SCOTT, Plaintiff, Cross-Appellant, *v.* GOLDBLATT BROTHERS, INC., Defendant and Third Party Plaintiff-Appellant, Cross-Appellee— (BERNARD HUINER, Trustee of the Estate of PETER HUINER, d/b/a PETER HUINER COMPANY, Third Party Defendant-Appellee.)

(No. 52278;

First District—November 17, 1970.

*Rehearing denied February 17, 1971.*

William P. Nolan and Pretzel, Stouffer, Nolan & Rooney, both of Chicago, (Joseph B. Lederleitner, of counsel,) for defendant and third party plaintiff-appellant cross-appellee.

David Alswang, of Chicago, for plaintiff-cross-appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, (J. M. Moelmann and D. K. Griffith, of counsel,) for third-party defendant-appellee.

Mr. JUSTICE BURKE delivered the opinion of the court:

An action was brought by Richard Scott (Scott) against Goldblatt Brothers, Inc., (Goldblatt Brothers) to recover for personal injuries sustained by Scott, a scavenger helper, as he attempted to cut a sealed steel drum which had been discarded by Goldblatt Brothers. Goldblatt Brothers filed a third party complaint against Scott's employer, the Peter Huiner Company (Huiner Company), a scavenger service, for indemnification in whatever amount a judgment, if any, would be entered for Scott in the primary action. At the close of all the evidence, a verdict was directed in favor of the Huiner Company and against Goldblatt Brothers in the third party action, and the jury returned a verdict in favor of Goldblatt Brothers and against Scott in the primary action.

Upon post trial motions filed by the respective parties, the trial court granted Scott a new trial in the primary action, upheld the original determination in the third party action, and denied Scott's motion to fix and assess costs and fees against Goldblatt Brothers under Section 41 of the Civil Practice Act. This is an appeal by Goldblatt Brothers from the judgment entered against it in the third party action. A cross-appeal is also herein prosecuted by Scott from the order denying his motion to fix and assess costs and fees against Goldblatt Brothers. (Goldblatt Brothers also filed a Petition for Leave to Appeal to this Court from the order granting Scott a new trial in the primary action, which has been denied. See General Number 52086.)

The Huiner Company was engaged by Goldblatt Brothers to remove waste and rubbish discarded from its store located at Lincoln and Belmont Avenues in Chicago. In its service, the Huiner Company employed a scavenger truck, commonly known as a Leach truck, into which rubbish was loaded by means of a hopper in the rear of the truck. The Huiner Company supplied its customers with specially designed large steel disposal boxes, called Leach boxes, which are equipped with handle-like protrusions on the sides of the box to which is attached a rod-like arm. Chains attached to a large rotating steel blade on the inside of the hopper are hooked onto the protrusions on the Leach box, described above, and the blade is activated by means of a lever on the rear side portion of the truck.

As the blade moves upward and inward into the body of the truck, the

Leach box containing rubbish is carried upward and turned almost upside down, spilling the contents of the box into the hopper. The operator of the lever and blade observes the operation, and when the contents of the box have been spilled, the box is lowered and the chains unhooked. Before the box is taken away from the truck, the lever operator returns the blade to the top of the hopper to compress the rubbish so dumped, watching that the chains do not get caught between the blade and the sides of the truck body.

The rubbish and waste materials thrown into the hopper consisted of, among other matters, steel drums, pipes and wood. Items such as steel drums are cut into two sections by a scissor-action of the blade against the edge of the hopper mouth, and then the sections are crushed by the blade to decrease the space the item would otherwise occupy inside the body of the truck; the portion of the drum protruding from the hopper during the cutting process is not secured. During the operation of the blade, the cover of the mouth of the hopper could not be closed, and was closed only when the truck was proceeding to the dump or to the garage.

On December 7, 1962, Richard Scott was employed by the Huiner Company as a scavenger truck helper. He and truck driver, Casey Boonstra, were removing rubbish from the loading dock in the rear of the Goldblatt Brothers store at Lincoln and Belmont Avenues, the rubbish consisting of a sealed 33-gallon drum with a spigot on top, several larger open-ended drums containing miscellaneous rubbish, and some broken-down wooden crates. Goldblatt Brothers' employee, Elmer Noren, was in charge of the rubbish on the dock and indicated to the scavengers that all of the rubbish on the dock was to be discarded.

While standing on the dock, Scott dropped the 33-gallon drum into a Leach box below, not noticing how light or heavy it was, nor whether there were any warnings printed on the drum. Scott emptied more rubbish from the open-ended drums into the Leach box, alighted from the dock, and took the box to the truck to be dumped. The contents of the Leach box, including the 33-gallon drum, were dumped into the hopper by the method above described, and Scott reversed the direction of the Leach box, intending to lower it to the ground. Scott testified that he could see the 33-gallon drum inside the hopper as the Leach box descended, and that just before the box came to the ground, he heard a loud noise or explosion and observed the blade of the hopper come into contact with the drum and twist back. Scott testified that he then saw some yellow liquid coming toward his face, striking him in the eye and causing serious and permanent injuries.

The evidence reveals that the 33-gallon drum had contained a yellow

liquid material used by Goldblatt Brothers to prevent rusting of boilers; an inspection of the hopper of the truck after the mishap revealed the presence of two to three gallons of the yellow mixture inside the hopper. There was also evidence that Noren had observed a "caution" sign on the drum, and that he did not warn Scott in any manner as the latter was placing the drum into the Leach box. Evidence was introduced of custom and usage in the scavenger industry, that the scavenger was warned if anything combustible or explodable was discarded by the customer. Noren had, on prior occasions, observed the Huiner Company employees cutting large steel drums in the manner described, and Scott testified that he had been in the employ of the Huiner Company almost a year and had cut steel drums at the Goldblatt Brothers site on occasions before the mishap. The Leach truck employed by the Huiner Company was the "usual and customary type used in the scavenger business in Chicago in 1962."

Goldblatt Brothers maintains that it was error for the trial court to "determine the third party action as a matter of law without submitting it to the jury." It is contended that the third party complaint was not based upon the theory of active-passive negligence alone, but also on the theory of a breach of an implied obligation on the part of the Huiner Company to perform the work in a manner so as not to expose Goldblatt Brothers to liability.

■■ The third party complaint alleges that if Goldblatt Brothers is liable to Scott, it is entitled to indemnification from the Huiner Company, thereby seeking to shift the entire burden of loss to the latter. However, before Goldblatt Brothers could be exposed to liability by the act of the Huiner Company, some relationship or circumstance must be shown to exist between them giving rise to derivative or vicarious liability. (*Bohannon v. Joseph T. Ryerson & Son, Inc.*, 16 Ill.App.2d 402, 407.) The evidence adduced at trial revealed no such circumstance or relationship, nor did it reveal that Goldblatt Brothers could be held responsible for the Huiner Company's improper performance of its duties under the contract.

■■ There was evidence introduced at trial from which the trier of fact could have found that Goldblatt Brothers had a duty to warn Scott under the circumstances and that failure to so warn could foreseeably lead to injury. Whether the Huiner Company was guilty of culpable conduct in the manner in which it instructed its employees to dispose of rubbish such as steel drums is of no consequence, since the trier of fact could have found that Goldblatt Brothers was either solely responsible for the injury to Scott, or that its dereliction of duty combined with the Huiner Company's conduct to cause the injury. The trial court

therefore properly directed the jury to find for the third party defendant, inasmuch as there can be neither indemnity nor contribution as between joint tort-feasors under such circumstances. *Wanack v. Michels*, 215 Ill. 87, 94.

No written scavenger service contract was introduced into evidence by which the Huiner Company agreed to indemnify Goldblatt Brothers under such circumstances. (*Westinghouse Electric Elevator Co. v. La Salle Monroe Building Corp.*, 395 Ill. 429.) The evidence does not reveal grounds upon which an implied indemnity may be invoked, as in cases involving suppliers of products (*Suvada v. White Motor Co.*, 32 Ill.2d 612); owners or possessors of property (*D'Amico v. Moriarty Meat Co.*, 47 Ill.App.2d 63); operations under public franchise (*Dart Transit Co., Inc. v. Wiggins*, 1 Ill.App.2d 126); and the like.

■■ The cases cited by Goldblatt Brothers in support of its position are not in point. They involve dismissals of complaints for indemnity at the pleadings stage of the case. (*Mierzejwski v. Stronczek*, 100 Ill.App.2d 68; *Blaszak v. Union Tank Car Co.*, 37 Ill.App.2d 12; *Boston v. Old Orchard Business Dist., Inc.*, 26 Ill.App.2d 324; *Trzos v. Berman Leasing Co.*, 86 Ill.App.2d 176.) Here, the trial court directed a verdict for the third party defendant on the third party complaint after all the evidence was heard, creating a question of law whether, on that evidence, the case should be submitted to the trier of fact. See *Yankey v. Oscar Bohlin & Son, Inc.*, 37 Ill.App.2d 457, 468—69.

■■ With respect to the cross-appeal of Scott concerning the motion to assess reasonable expenses and attorney's fees against Goldblatt Brothers under Section 41 of the Civil Practice Act, it does not appear that the allegations in the third party complaint were made without reasonable cause or in bad faith. (Ill. Rev. Stat. 1969, ch. 110, par. 41.) The directed verdict for the Huiner Company was an adjudication that Goldblatt Brothers failed to prove its theories of vicarious liability or implied indemnity. This determination alone does not establish that the third party complaint was prosecuted in bad faith. (*Andes v. Roskin*, 98 Ill. App.2d 477.) The trial court did not abuse its discretion in denying the motion for reasonable expenses and attorney's fees.

For these reasons the judgment entered on the third party complaint and the order denying the motion to assess reasonable expenses and attorney's fees are affirmed.

Judgment and order affirmed.

McCORMICK, P. J., and LYONS, J., concur.