Ossie Stanfield, Plaintiff, *v.* Medalist Industries, Inc., Defendant—
(Medalist Industries, Inc., Defendant and Third-Party Plaintiff, *v.*
General Electric Cabinet Co., Third-Party Defendant-Appellant.)

(No. 73-31; 

Second District—March 26, 1974.

Miller & Hickey, of Rockford (Francis E. Hickey and Richard E. Carlson, of counsel), for appellant.

Gilbert & Powers, of Rockford, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:
Third-party defendant, General Electric Cabinet Co., appeals from

an order denying its motion to dismiss the third-party complaint brought herein. The facts are as follows.

Ossie Stanfield (hereinafter referred to as "employee"), an employee of General Electric Cabinet Co. (hereinafter referred to as "employer"), was injured when her hand was partly amputated by a machine she was operating for the first time.

The machine had been manufactured by Medalist Industries, Inc. (hereinafter referred to as "manufacturer"). In addition to filing a workmen's compensation claim, the employee filed suit against the manufacturer of the machine under the "strict liability" theory pertaining to products put into the stream of commerce in a defective and unreasonably dangerous condition, alleging that the machine in question was defective and unreasonably dangerous because it had no guard or shield to prevent the sort of injury she suffered and no adequate warning was given by the manufacturer as to its dangerous propensities.

Manufacturer filed a third-party complaint against employer asking that if manufacturer were found liable on the suit by employee that manufacturer be indemnified by employer for any amounts it might have to pay to employee. The basis for the third-party action by manufacturer was that employer had not given adequate instruction or supervision to employee whereby employee, being inexperienced in the use of the machine, failed to use it properly, thereby losing her hand.

Employer filed a motion to dismiss the third-party complaint on the ground that (a) there can be no contribution between joint tort-feasors under Illinois law and (b) the indemnity theory, which has in some cases been allowed as an exception to the joint tort-feasor rule, is not applicable in this case because this is a "strict liability" case and not founded on the ordinary rules of negligence.

The trial court denied the motion to dismiss the third-party complaint, but under Supreme Court Rule 308 (Ill. Rev. Stat. 1969, ch. 110A, par. 308) allowed an appeal to be filed from the interlocutory order denying the motion to dismiss. The court certified the points of law to be decided in the appeal as:

> "When suit is brought against a defendant alleging defective design and manufacture of a product, is it proper, under the law, that such defendant, as a third-party plaintiff, be permitted to maintain a third-party action on the theory that the third party defendant was actively or primarily delinquent, at fault or negligent, whereas the conduct of the third party plaintiff allegedly was passive or secondary; and
>
> Whether a third party action based on the active-passive doctrine,

enunciated by the Illinois Supreme Court in *Miller v. DeWitt*, 226 N.E.2d 630 (1967) and upheld in subsequent cases by appellate courts of this State, can be maintained in view of Sections 5 and 11 of the Illinois Workmen's Compensation Act, (Ch. 48, Sec. 138.5 and 158.11, Ill. Rev. Stat., (1971)) when the workmen's compensation claim of the Plaintiff-in-chief has been fully satisfied by the third party defendant, on the theory that the third party defendant can be held to indemnify the third party plaintiff when the latter is being sued in the action-in-chief for defective design and manufacture of a product."

The third-party complaint which the employer seeks to dismiss in this case is founded on the doctrine of active-passive negligence which, under Illinois law, has evolved as an exception to the general "no contribution among joint tort-feasors" rule which prevailed at common law and which has long been recognized in Illinois as the general rule. The rule does not provide for apportionment of negligence but does allow indemnity (that is, the shifting of the entire burden) where one of two tort-feasors can establish that his negligence was only *passive*, whereas the negligence of the other party was *active*, that is, that such other party was the actual agency through which the injury was incurred.

One of the leading cases in establishing this doctrine is *Miller v. DeWitt* (1967), 37 Ill.2d 273, 226 N.E.2d 630, where it was held that the architect of a school gymnasium could sue the contractor for indemnity on the basis that the architect was only the passive agent whereas the actual wrongdoer was the contractor, whose negligence was active. The earlier cases of this kind were fairly simple because they involved a single act of negligence or a single situation and some relationship between the parties, such as in *Miller v. DeWitt, supra*. In later development the doctrine became very complicated through the courts' applying the doctrine of indemnity in cases where there were two separate and independent acts of negligence by two tort-feasors having no functional relationship with each other. In *Sargent v. Interstate Bakeries, Inc.* (1967), 86 Ill.App.2d 187, 229 N.E.2d 769, for example, the plaintiff sued both the motorist who actually struck her and in another count a bakery company whose truck was illegally parked in the crosswalk. The bakery company counter-claimed against the motorist asking for indemnity against the motorist if the bakery company was held liable. The trial court granted a motion to dismiss the counterclaim on the ground that the negligence *charged* against the bakery was active in character and to allow the counterclaim would be, in effect, to sanction contribution between tort feasors. However, the Appellate Court (1st Dist.) held it was error to dismiss the counterclaim and said that the case should be heard

on its merits, even though the two acts of negligence were separate and apart from each other. On similar facts the court reached the same conclusion in *Reynolds v. Illinois Bell Telephone Co.* (1964), 51 Ill.App.2d 334, 201 N.E.2d 322; see also *Campbell v. Joslyn Manufacturing & Supply Co.* (1965), 65 Ill.App.2d 344, 212 N.E.2d 512; *Blaszak v. Union Tank Car Co.* (1962), 37 Ill.App.2d 12, 184 N.E.2d 808; *Trzos v. Berman Leasing Co.* (1967), 86 Ill.App.2d 176, 229 N.E.2d 787, and *Krambeer v. Canning* (1962), 36 Ill.App.2d 428, 184 N.E.2d 747. The gist of these cases is that where a third-party complaint is filed by one tort-feasor against another, the court will not dismiss the third-party complaint on the basis of allegations of active negligence made in the original complaint against the third-party plaintiff (original defendant) which, if proved, would foreclose his right of indemnity, but the court will hear the evidence to determine whether, in fact, the third-party plaintiff was only passively negligent, hence entitled to indemnification from the third-party defendant.

Here, the manufacturer has alleged acts of active negligence on the part of the employer and only passive negligence on its own part. Therefore, if we were dealing with a case founded on ordinary negligence the cited cases would seem to establish the right of manufacturer (third-party plaintiff) to be heard on the question of active-passive negligence.

Employer (appellant) contends, however, that this is not a case of ordinary negligence but one founded on the doctrine of "strict liability" as set forth in the case of *Suvada v. White Motor Co.* (1965), 32 Ill.2d 612, 210 N.E.2d 182. In the course of this opinion our supreme court quotes the Restatement of the Law of Torts (Second), approved in May, 1964, on the doctrine of strict liability, page 621, as follows:

> "'(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
>> '(a) the seller is engaged in the business of selling such a product, and
>> '(b) it is expected to reach the user or consumer in the condition in which it is sold.
>
> '(2) The rule stated in subsection (1) applies although
>> '(a) the seller has exercised all possible care in the preparation and sale of his product, and
>> '(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller'."

■■■ It is apparent from the above language that the basis of liability is the putting into the stream of commerce of a defective and dangerous

product and that the liability proceeding therefrom is not based on ordinary negligence but is based on the consideration of protecting the public from such products. In such cases there is no active-passive negligence relationship between the parties upon which the doctrine of indemnity can operate. It appears that the liability in these cases is qualitatively *active* so far as the seller or manufacturer is concerned and because of his unique relationship to the product as its creator, his negligence cannot be offset against that of a mere subsequent user. We conclude, therefore, that actions founded on strict liability for defective and unreasonably dangerous products are outside the active-passive theory of indemnity. Hence, third-party actions for indemnity against a subsequent user are not maintainable by the manufacturer or seller of the defective product.

The same conclusion was reached in the recent case of *Burke v. Sky Climber, Inc.* (1973), 13 Ill.App.3d 498, 301 N.E.2d 41. There the widow of an employee of a housing authority brought action for the death of her husband, which occurred when a cable on a scaffold broke. The action was brought against the scaffold manufacturer and the manufacturer filed a third-party claim for indemnity against the housing authority. The trial court dismissed the complaint and the manufacturer appealed. The Appellate Court (1st Dist.) affirmed the trial court's ruling, saying at page 504:

> "It is Sky Climber's theory here that it had legal right to bring an action over against CHA for common law indemnity. Sky Climber concedes here that no Illinois court has ever held that this type of action is permissible. But it urges 'that there are neither practical nor theoretical nor policy reasons which should preclude such an action.' We cannot agree.
>
> In our opinion, the basic underlying reasons of policy, as expressed in *Suvada*, should be operative here to prevent this type of indemnity. Sky Climber is the manufacturer and distributor of this product and therefore presumably the one who reaped the profits from its manufacture. Hence, the ultimate liability, if there be one because of a defective or unreasonably dangerous condition of the product when it left the manufacturer's possession, should rest upon Sky Climber as creator of the product."

We agree with this conclusion. It would seem totally unfair to fasten strict liability on the employer by way of indemnity when the employer's relationship to the offending product is that of a mere user and the employer does not sustain any relationship to the injured party which would justify imposition on him of strict liability.

■■ The judgment of the trial court is therefore reversed with instruc-

tions to grant the motion dismissing the third-party complaint. With regard to the specific points of law certified by the trial court, both questions are answered in the negative.

Reversed and remanded with instructions.

T. MORAN, P. J., and GUILD, J., concur.