RITA RAE SKINNER, a Minor, by Virginia Skinner, her Mother and Next Friend, Plaintiff, *v.* REED-PRENTICE DIVISION PACKAGE MACHINERY CO., Defendant and Third-Party Plaintiff-Appellant.—(HINCKLEY PLASTIC, INC., Third-Party Defendant-Appellee.)

First District (1st Division)   No. 61220

Opinion filed June 21, 1976.

Gerard E. Grashorn, of Chicago (Edward J. Wendrow, Stephen C. Bruner, and Winston & Strawn, of counsel), for appellant.

William H. Arpaia, of Chicago (Joseph B. Lederleitner and Pretzel, Stouffer, Nolan & Rooney, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Rita Rae Skinner (plaintiff) had been employed by Hinckley Plastic, Inc. (Employer). She was injured in a mishap involving an injection molding machine owned by the Employer and originally manufactured by Reed-Prentice Division Package Machinery Co., a corporation (Manufacturer). Plaintiff brought action against the Manufacturer on a strict tort liability theory. The Manufacturer in turn filed an amended

third-party complaint seeking contribution from the Employer. The trial court granted the motion of the Employer to strike and dismiss the amended third-party complaint of the Manufacturer. The Manufacturer has appealed.

■■ Since the issues are formed in connection with propriety of the dismissal of the amended third-party complaint, we will accept all properly pleaded facts therein as true. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 554, 328 N.E.2d 538.) Plaintiff's complaint alleged that the Manufacturer had fabricated the press in question which had been purchased or leased by the Employer. The press was being used for the purpose for which it was intended. Plaintiff was injured on August 3, 1972, while attempting to assist another employee correct a malfunction in the machine. When manufactured and sold, the machine was defective and unreasonably dangerous when put to the use for which it was intended. The complaint then specified 12 separate alleged instances in which the machine was defective, improperly designed and lacking in safety devices. It alleged that these defects, or one or more of them, existed when the machine was manufactured and delivered into the stream of commerce and when acquired by the Employer and that plaintiff's injuries were a direct and proximate result of one or more of the specified defects.

The answer of the Manufacturer to the complaint generally denied the allegations of fact except for an admission that the machine had been manufactured and sold by it during 1951 and an admission of the employment of plaintiff. The answer also contained additional defenses of consistent misuse of the machine and assumption of risk by plaintiff.

The Manufacturer then filed an amended third-party complaint against the Employer. It alleged that in 1951 Manufacturer had fabricated and sold the specific machine involved for approximately $15,000 to a different company. Between that date and August 3, 1972 (date of the occurrence herein), this machine had been sold and resold as used equipment to at least three successive purchasers. The Employer had last purchased the machine in March 1972 for approximately $750. The Employer had then installed the machine and commenced to use it for manufacturing plastic products.

The third-party complaint further alleged that the Employer had hired plaintiff as a machine operator about June 8, 1972. On August 3, 1972, while this machine was being operated by a different employee, the safety gate became disengaged from the rails. A different employee of Employer was attempting to replace the gate with the assistance of plaintiff when the mold closed and struck plaintiff's arm. It was further alleged that if the machine was unreasonably dangerous when it left the Manufacturer's control and if it was unreasonably dangerous when

plaintiff was injured, this latter condition was substantially and proximately caused by the negligent acts and omissions of the intervening owners of said machine and of the Employer. It also alleged that the Employer negligently purchased and put in operation a used machine which had been poorly maintained, was in a state of bad repair and had been modified, rewired and rebuilt so that it was no longer in the same condition as when it left the Manufacturer's possession and these changes caused the machine to be unreasonably dangerous when plaintiff was injured.

The Manufacturer also alleged other specified negligent acts or omissions by the Employer, such as allowing the machine to be operated when it knew, or should have known, that the machine was rewired so that safety devices initially installed thereon by the Manufacturer had become inoperative; knowingly allowing the machine to be operated without the adequate guards originally furnished therewith and other specified acts and omissions.

The Manufacturer then further alleged that if it was guilty in any manner, its acts combined with the various acts of the Employer as alleged resulted in plaintiff's injuries which, in such case, were caused by a combination of the conduct of both parties so that they were co-tort-feasors. The Manufacturer concluded that it was entitled to recover from the Employer "by way of contribution, such amount as would be commensurate with the degree of misconduct attributable to the [Employer] * * *."

The Employer filed a motion to strike the amended third-party complaint on the ground that the acts of negligence alleged in plaintiff's complaint dealt entirely with defective manufacture of the machine and that the Manufacturer had charged the Employer with seven specific acts of negligence in the maintenance and operation of the machine. It alleged that fault-weighing concepts could not be applied as a basis for indemnity in strict liability cases and that the negligence of a manufacturer in the active creation of a defect in the process of manufacture could not be classified as passive negligence. It alleged that where all of the charges in plaintiff's complaint consisted of active negligence, it follows that the Manufacturer would not be entitled to indemnity against any third-party defendant since where the negligence of a tort-feasor is active, he may not obtain indemnity whether the negligence of a third-party defendant is active or passive. It set forth that the Manufacturer claimed that the Employer was a co-tort-feasor and thus sought contribution but that the law in Illinois provides no contribution between co-tort-feasors.

In due course, the able and learned trial judge filed an opinion and judgment order in which he concluded that there is no decision in Illinois allowing contribution under the facts pleaded in the third-party

complaint. The trial court expressed sympathy with the position of the Manufacturer as third-party plaintiff and a desire to permit relief by way of contribution "if it had the power to do so" as done in *Dole v. Dow Chemical Co.* (1972), 30 N.Y.2d 143, 331 N.Y.S. 2d 382, 282 N.E.2d 288. The trial court concluded, however, with the statement that if the Manufacturer is to be granted relief, this must necessarily emanate "from the reviewing Courts of this state \* \* \*." The trial court accordingly dismissed the amended third-party complaint.

In this court the Manufacturer contends that Illinois law does not actually prohibit contribution between tort-feasors in all cases and sound public policy requires contribution between tort-feasors under the circumstances presented here where the tort was unintentional and the tort-feasors acted independently; cases involving indemnity, intentional torts and tort-feasors acting in concert are not in point so that the way is open for this court to uphold contribution as required by sound public policy and reason instead of applying the active-passive test for indemnity. In response, the Employer contends that contribution to a passive tort-feasor from an active tort-feasor has been recognized in Illinois for years as an exception to the general rule, particularly in situations where each of the tort-feasors breached equally stringent duties or when public policy so required. But, the Manufacturer is precluded from seeking contribution because public policy requires that its strict tort liability be considered active.

Before commencing to analyze the issues, we wish to state that the briefs submitted by both sides of the controversy are excellently and expertly done in a most lawyer-like fashion. Reading these briefs has given us a privilege which we sometimes lack.

■■ The initial problem here involves consideration of application of principles of common law indemnity in a strict tort liability case. The situation is clarified and decided by *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 82, 338 N.E.2d 857, where the Supreme Court used this language:

> "The major purpose of strict liability is to place the loss caused by defective products on those who create the risk and reap the profit by placing a defective product in the stream of commerce, regardless of whether the defect resulted from the 'negligence' of the manufacturer. We believe that this purpose is best accomplished by eliminating negligence as an element of any strict liability action, including indemnity actions in which the parties are all manufacturers or sellers of the product."

*Liberty Mutual* involved an attempt by the subrogee of the manufacturer of an adjustable scaffold to obtain indemnity from the fabricator of a defective component part installed in the machine. The

subrogee had made settlement of suits brought against its insured by injured users of the scaffold. The Supreme Court refused to apply principles of active or passive negligence and held that the defense of contributory negligence was not available to the manufacturer of the defective part. The court cited a number of decisions by the Appellate Courts of Illinois, "which have refused to apply negligence concepts to strict liability actions in situations similar to the present case." (62 Ill. 2d 77, 83.) Included among these citations is *Burke v. Skyclimber, Inc.* (1973), 13 Ill. App. 3d 498, 301 N.E.2d 41, *aff'd* (1974), 57 Ill. 2d 542, 316 N.E.2d 516 in which this court and the Supreme Court affirmed dismissal of a third-party complaint brought by the manufacturer of a scaffold in a strict liability case against the employer of the injured plaintiff. The third-party complaint was predicated upon the theory of active negligence by the employer as contrasted with allegedly passive negligence of the manufacturer. In *Peterson v. Lou Bachrodt Chevrolet Co.* (1975), 61 Ill. 2d 17, 20, 329 N.E.2d 785, the Supreme Court stated the underlying public policy of imposing strict liability upon the manufacturer who has " 'created the risk and reaped the profit by placing the product in the stream of commerce.' (32 Ill. 2d 612, 619.)"

Thus, if we are to build with logical consistency upon the foundation of this policy, negligence must necessarily be omitted as an element of any strict liability action and in connection with claims for indemnity arising therefrom.

However, the Manufacturer as third-party plaintiff in the case before us does not seek indemnity in its amended third-party complaint. Drawn with obvious skill and care, this pleading seeks judgment in favor of the Manufacturer and against the Employer, "in such amount, by way of contribution, as would be commensurate with the degree of misconduct attributable to the third party defendant [Employer] in causing plaintiff's injuries." The distinction between contribution and indemnity is readily found. "There is an important distinction between contribution, which distributes the loss among the tort-feasors by requiring each to pay his proportionate share, and indemnity, which shifts the entire loss from one tort-feasor who has been compelled to pay it to the shoulders of another who should bear it instead." *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 624, 210 N.E.2d 182, citing Prosser, Law of Torts, ch. 8 (3d ed. 1964).

The exact issue before us, therefore, is not concerned with indemnity but requires us to decide whether, in a case brought upon the theory of strict tort liability, the Manufacturer as defendant and third-party plaintiff may recover contribution from the allegedly negligent Employer in accordance with the degree of misconduct attributable to such Employer. This precise issue has never been decided by the Supreme Court of Illinois.

■■■ In our opinion, a decision to apply theories of contribution in the instant case would require substantive and procedural formulations beyond the authority of this court. Whether contribution, which necessarily involves application of principles of comparative negligence, should be granted to a manufacturer in a suit brought upon the theory of strict tort liability is the type of issue which should be decided by the highest court of this State, or by the legislature of this State, with subsequent formulation of necessary guidelines by the Supreme Court in its decision or under its "[g]eneral administrative and supervisory authority over all courts * * * ." (Ill. Const. 1970, art. VI, §16.) In a rather similar situation, the Supreme Court of Illinois has held that a change in the basic tort theory of contributory negligence by adoption of a rule of comparative negligence "should be made by the legislature rather than by the court." (*Maki v. Frelk* (1968), 40 Ill. 2d 193, 196, 239 N.E.2d 445.) We are bound also to advert once more to the language of the Supreme Court in *Liberty Mutual*: "[I]t seems to us that perpetuation of ordinary negligence and indemnity concepts in the context of strict liability actions does not recognize the unique nature of such actions and the fundamental differences underlying strict liability and negligence law." (62 Ill. 2d 77, 84.) We are therefore constrained to deny the plea of the Manufacturer for third-party contribution against the Employer in this situation where an employee has instituted the original action to enforce strict tort liability.

In the case before us no evidence has yet been heard. However, the record shows allegations by the Manufacturer in the amended third-party complaint that the product was manufactured in 1951, sold and resold, purchased in 1972 by the Employer for a fraction of its original value and then modified and misused in various respects. If these facts are sustained by the evidence, and if any original product defect did not cause plaintiff's injury, the Manufacturer would have a successful defense in the original action and no questions concerning indemnity or contribution would be presented. See *Burke*, 57 Ill. 2d 542, 546.

The judgment of dismissal of the amended third-party complaint is accordingly affirmed.

Judgment affirmed.

BURKE and SIMON, JJ., concur.