RONALD STEVENS, Plaintiff, *v.* SILVER MANUFACTURING COMPANY, d/b/a Industrial Shredder and Cutter Company, *et al.*, Defendants and Third-Party Plaintiffs-Appellees.—(GENERAL BOX COMPANY, Third-Party Defendant-Appellant.)

Second District (1st Division)   No. 75-463

Opinion filed August 27, 1976.

Marvin Riman and Eliot R. Schiff, both of Sweeney & Riman, of Chicago, for appellant.

Timothy J. Reuland and William C. Murphy, both of Reid, Ochsenschlager, Murphy & Hupp, of Aurora, for appellees.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The sole question here is whether a manufacturer and a distributor of a material shredding machine, having settled a products liability claim brought against them by a plaintiff personally injured by it, may obtain indemnification from the injured person's employer on the grounds that such employer negligently or recklessly failed to supervise or instruct as to its use, removed certain safety devices, allowed certain hazardous work practices and allowed a handicapped person to operate the machine. The trial court denied the third-party defendant's motion to dismiss the amended third-party complaints and certified the case to us. We have previously allowed leave to appeal. We now hold that no right to indemnification exists and therefore reverse the order denying the motion to dismiss and dismiss the amended third-party complaints without remandment.

Ronald Stevens, a mentally retarded and physically handicapped employee of General Box Company (the third-party defendant) was severely injured while operating a shredding machine on his employer's premises. After collecting compensation benefits, he filed suit against Silver Manufacturing Company, d/b/a Industrial Shredder and Cutter Company, the manufacturer and Steelcraft Corporation, the assembler and installer of the machine, alleging that:

> 1. The shredder did not contain adequate or any guards for the sharp cutting edges of the spiral knives and the mechanism leading thereto.

> 2. The shredder did not contain adequate controls for the operator thereof, such that in the operation of the machine his hands were kept clear of the spiral knives.

> 3. The shredder's accompanying instructions were not adequate as to the proper and safe method of operating the machine.

> 4. The shredder contained inadequate cutoff and safety switches to shut the machine in situations of danger.

> 5. The shredder did not have affixed thereto any warnings of its inherent dangers.

6. (as to Steelcraft only) The defendant failed to adequately instruct the employer in the proper use of the baling system.

Both defendants denied that the product was unreasonably dangerous or in a defective condition when it left their control or that any defective condition proximately resulted in the plaintiff's injuries and in addition raised the defenses of misuse and assumption of the risk. Silver also defended on the grounds the sole proximate cause of the injury was the employer's negligence. Both defendants also filed third-party complaints for indemnity against the employer and Steelcraft also filed a counterclaim against the manufacturer. The court granted the employer's motion to strike these third-party complaints.

The defendants then settled the plaintiff's claim, Silver paying $227,000 and Steelcraft $113,000.

Silver and Steelcraft then amended and refiled their third-party complaints against the employer. The first count of Silver's second amended third-party complaint alleged that if the manufacturer was liable to Stevens it was only because it had manufactured the machine and that it had no knowledge of the use to which the machine was put, the quality or character of the operators, the actual volume and configuration of the material fed into the machine, nor any discussion with respect to the providing of safety devices, nor had it had any knowledge of the hiring of a physically handicapped and mentally retarded person to operate the machine, and that Silver's liability, if any, was based on passive or secondary tortious conduct, for the following reasons:

(a) The machine as manufactured was reasonably safe for operators thereof who operated and fed material from the feeder end of the machine.

(b) The instructions and warnings accompanying the machine were adequate to describe the proper and safe procedure with respect to clearing jam-ups of material in the blades, and preventing the operator from coming into proximity of the blades while turning.

(c) The machine as manufactured was reasonably safe for operators feeding flat material of less than forty inches width, such operation enabling the operator to feed the machine at all times from the feeder end of the machine.

(d) The machine as manufactured was reasonably safe for operation by persons of average intelligence and physical ability.

(e) The machine as manufactured was not reasonably safe, if at all, only on the basis that Silver should have foreseen that purchasers such as General Box might feed unusual materials into the machine and might permit physically and mentally

handicapped persons to operate the machine.

Silver further alleged that the employer had a duty to Silver to use reasonable care in the operation, maintenance and use of the machine so as to avoid injury to third parties but disregarded that duty by one or more of the following primary active acts which imposed liability on Silver for injuries to Stevens:

(a) Having actual knowledge of the safe design and purpose of the feeder end of the machine, failed to use reasonable care in permitting bulky waste materials to pile at the feeder end, thereby requiring operators to feed the machine from the side;

(b) having actual knowledge of the instructions and warnings accompanying the machine, failed to use ordinary care in communicating to all operators thereof the proper and safe method of feeding the machine, and the proper and safe method of clearing jam-ups of material;

(c) having actual knowledge of the capacity of the machine, and the anticipated material configuration which could be safely fed into it, failed to use ordinary care in directing and permitting the operators to feed such bulky, unwieldy or other unusual sizes of material that operators were required to and did, in fact, fold the material by hand on the machine itself, and in dangerous proximity to the cutting blades;

(d) having actual knowledge of the hazards to operators imposed by the particular circumstances of the General Box material disposal system, caused to be placed over the cutting end of the machine a protective shield or hood, concerning which thereafter General Box failed to use ordinary care in permitting it to be removed without substitute, prior to February 11, 1970;

(e) having actual knowledge of the hazards to operators imposed by the particular circumstances of the General Box material disposal system, failed to use ordinary care in permitting Ronald Stevens, a mentally retarded and physically handicapped person, to operate the machine and to feed materials into the machine from the side.

In count II of its complaint Silver alleged that the above enumerated acts were done intentionally or with reckless disregard of the consequences.

Likewise Steelcraft in its first amended third-party complaint alleged that its liability to Stevens existed if at all only by operation of law: that from the time of installation until the accident it had had no control over the operation, maintenance or use of the machine or the quality and type of operators thereof or of the employment of Stevens to operate the machine; that the employer owed a duty to Steelcraft to use reasonable

care in the operation, maintenance and use of the machine so as to avoid injury to third parties and that it disregarded that duty by the performance of certain enumerated acts either with the failure to use reasonable care (count I) or intentionally or with reckless disregard of the consequences (count II). The acts complained of were the same alleged by Silver except that in the last allegation, Steelcraft only complained of the employer's allowing Stevens to operate the machine from the side and not the employer's allowing Stevens to use the machine.

This time, the trial court denied the employer's motion to strike. However, it did certify the following questions to us pursuant to Supreme Court Rule 308:

(a) Does the second amended third party complaint of Silver Manufacturing Company state a cause of action against General Box Company?

(b) Does the first amended third party complaint of Steelcraft Corporation state a cause of action against General Box Company?

(c) Can a manufacturer or an entity in the distribution chain who has allegedly created an unreasonably dangerous product obtain complete or partial indemnity from the plaintiff's employer for the employer's active negligence and/or wilful and wanton misconduct?

(d) Can a manufacturer or an entity in the distribution chain charged with (creating and) placing into the stream of commerce an unreasonably dangerous product be passively negligent under any circumstances so as to permit complete or partial common law indemnification?

On December 18, 1975, we allowed the application for leave to appeal and the case has since has been fully briefed and argued.

It is well established in Illinois that "the major purpose of strict liability is to place the loss caused by defective products on those who create the risk and reap the profit by placing a defective product in the stream of commerce regardless of whether the defect resulted from the 'negligence of the manufacturer' " and that this purpose is best accomplished by eliminating negligence as an element of any strict liability action (*Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, at 82, 338 N.E.2d 857.) As that case pointed out, the perpetuation of ordinary negligence and indemnity concepts in the context of strict liability actions does not recognize the unique nature of such actions and the fundamental difference underlying strict liability and negligence law. And since actions founded on strict liability for defective and unreasonably dangerous products are outside the active-passive theory of indemnity, third-party actions for indemnity against a subsequent user are not maintainable by the manufacturer or seller of the defective

product. *Stanfield v. Medalist Industries* (1974), 17 Ill. App. 3d 996, 309 N.E.2d 104; *Kossifos v. Louden Machinery Co.* (1974), 22 Ill. App. 3d 587, 317 N.E.2d 749; *Skinner v. Reed-Prentice Division* (1976), 40 Ill. App. 3d 99, 351 N.E.2d 405.

Even if indemnification were not barred simply because the manufacturer's and seller's liability is based on strict liability and not on negligence, they could not recover against the seller. In essence the third-party plaintiffs contend either (1) that both they and the employer were guilty of breaching a duty owed to the plaintiff employee and thus jointly caused his injury or (2) that the conduct of the employer alone was the sole proximate cause of the accident. But even if true, neither contention is a ground for indemnification.

■■ ■ In general, when joint tortfeasors are *in pari delicto*, that is where each is chargeable with active or affirmative negligence contributing to the injury, neither is entitled to indemnity from the other. (41 Am. Jur. 2d *Indemnity* §21 (1968).) It is only when the third-party plaintiff did not actively or affirmatively participate in the wrong and did not breach an affirmative duty owed to the plaintiff in the principal case that he may obtain indemnification (*Warzynski v. Village of Dolton* (1974), 23 Ill. App. 3d 50, 317 N.E.2d 694). However, the cases are in accord that the liability of a manufacturer or distributor of a defective or unreasonably dangerous product is qualitatively active (*Stanfield v. Medalist Industries, Inc.* (1974), 17 Ill. App. 3d 996, 309 N.E.2d 104; *Burke v. Sky Climber* (1973), 13 Ill. App. 3d 498, 301 N.E.2d 41, *aff'd on other grounds* (1974), 57 Ill. 2d 542, 316 N.E.2d 516; *Lopez v. Brackett Stripping Machine Co.* (N.D.Ill. 1969), 303 F. Supp. 669), and that because of their unique relationship to the product as its creator or distributor, their negligence cannot be offset against that of a mere subsequent user (*Stanfield v. Medalist Industries, Inc.* (1974), 17 Ill. App. 3d 996, 309 N.E.2d 104). As stated by the court in *Kossifos v. Louden Machinery Co.* (1974), 22 Ill. App. 3d 587, 592-93, 317 N.E.2d 749:

> " * * * Louden is indeed asking us to compare apples with oranges and to create another exception to the policy against contribution between joint tortfeasors by holding that the tort of strict liability is a less culpable fault than the tort of ordinary negligence in terms of degree of social fault. Such an assessment, of course, must be made in the light of public policy, and the difficulty is that the assessment has already been made adversely to Louden's position.
>
> * * *
>
> * * * the [supreme] court, in effect, designated strict product liability as a more serious tort than the tort of ordinary negligence."

■■ The third-party plaintiffs contend that they should be able to obtain indemnification because, as they allege, their liability was created by the acts of the employer. But before the third-party plaintiffs can be exposed to liability by the actions of the third-party defendant, some relationship or circumstance must be shown giving rise to derivative or vicarious liability (*Scott v. Goldblatt Bros., Inc.* (1971), 130 Ill. App. 2d 1013, 266 N.E. 2d 154). There was no such relationship here. Neither the manufacturer nor the seller could have been held liable for the employer's tortious actions towards his employees; they could only be liable for a dereliction of a duty that they owed to the public.

Nor did the employer breach any duty owed to the manufacturer or seller as the third-party plaintiffs contend. Even if the allegations of the third-party complaint are true, the employer only breached a duty owed to the plaintiff employee. He owed no duty to the third-party plaintiffs to properly maintain and use the machine. *Bradford v. Bendex-Westinghouse Automotive Air Brake Co.* (1973), 33 Colo. App. 99, 517 P.2d 406, *cert. denied* (1974); *Lewis v. Amchem Products, Inc.* (Mo. App. 1974), 510 S.W.2d 46; and see *McClish v. Niagara Machine & Tool Works* (S.D. Ind. 1967), 266 F. Supp. 987; *Burke v. Sky Climber* (1973), 13 Ill. App. 3d 498, 301 N.E.2d 41, *aff'd on other grounds* (1974), 57 Ill. 2d 542, 316 N.E.2d 516.

■■ Nevertheless the third-party plaintiffs contend that indemnification should be allowed because in count II they allege the plaintiff acted intentionally or with reckless disregard of the consequences. However, the actions of one party do not change the character of the other party's negligence. *(Doerge v. Wabash R.R. Co.* (1972), 4 Ill. App. 3d 914, 282 N.E.2d 226.)* In general to obtain indemnification, the plaintiff must prove that the defendant was the real party at fault and that plaintiff's liability was derived from a relationship which did not involve negligence or misconduct on his part. *(Spivack v. Hara* (1966), 69 Ill. App. 2d 22, 216 N.E.2d 173.)* Thus in that case, a negligent driver was denied indemnification from one found guilty of wilful and wanton conduct. And even where misuse of the product by the employer-user was alleged, it was held that "the qualitative culpability of both parties in this type of situation could only be equal." *Burke v. Sky Climber* (1973), 13 Ill. App. 3d 498, 503, 301 N.E.2d 41, *aff'd on other grounds* (1974), 57 Ill. 2d 542, 316 N.E.2d 516.

The third-party plaintiffs' alternative contention is that the conduct of the employer in misusing or altering the machine, or in allowing certain dangerous practices, alone was the sole proximate cause of the accident. Proof of the same however would have been a complete defense to the action brought by the employee and accordingly cannot serve as the basis for a suit for indemnification against the user. *Kuziw v. Lake*

*Engineering Co.* (N.D. Ill. 1975), 398 F. Supp. 961; *Burke v. Sky Climber* (1974), 57 Ill. 2d 542, 316 N.E.2d 516; *Skinner v. Reed-Prentice Division* (1976), 40 Ill. App. 3d 99, 351 N.E.2d 405.

The basic premise of strict tort liability is that the injury is caused by the unreasonably dangerous condition of the product. *(Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232.) Thus before either a manufacturer or distributor may be held liable, the plaintiff must prove that the product contained a defective condition which existed at the time it left the defendant's control, rendering the product unreasonably dangerous and proximately causing the injury *(Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 338 N.E.2d 857; *Wenzell v. MTD Products, Inc.* (1975), 32 Ill. App. 3d 279, 336 N.E.2d 125); misuse and assumption of the risk will bar recovery *(Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305; *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 338 N.E.2d 857). It is obvious, accordingly, if the machine was not defective at the time it left the manufacturer's or seller's possession, but the defect was created by the seller, neither the manufacturer nor the seller could be held liable. *(Kossifos v. Louden Machinery Co.* (1974), 22 Ill. App. 3d 587, 317 N.E.2d 749; *Lopez v. Brackett Stripping Co.* (N.D. Ill. 1969), 303 F. Supp. 669.) And even if the product was defective and in an unreasonably dangerous condition when it left the manufacturer's and distributor's possession, if the injury was not proximately caused by this condition but by the employer's actions, the manufacturer and seller would not be liable. *(Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232.) Likewise, if the injury were due to a misuse of the machine by the employer, the manufacturer and seller could not be held liable. *(Burke v. Sky Climber, Inc.* (1974), 57 Ill. 2d 542, 316 N.E.2d 516.) But a defendant settling a claim for which he is not liable is not entitled to indemnification. *Warzynski v. Village of Dolton* (1974), 23 Ill. App. 3d 50, 317 N.E.2d 694; *Lewis v. Amchem Products, Inc.* (Mo. App. (1974), 510 S.W.2d 46; 41 Am. Jur. 2d *Indemnity* §33 (1968).

■■ Nor is the result unreasonable, particularly when it is borne in mind that the employer could not have been liable in tort to the employee. As we stated in *Stanfield v. Medalist Industries, Inc.* (1974), 17 Ill. App. 3d 996, 1000, 309 N.E.2d 104, "it would seem totally unfair to fasten strict liability on the employer by way of indemnity when the employer's relationship to the offending product is that of a mere user and the employer does not sustain any relationship to the injured party which would justify imposition on him of strict liability." It would seem even more unreasonable to allow a manufacturer or seller to create a strict liability which did not exist by settling a claim for which they were not

liable and then seeking indemnification against an employer whose liability normally is limited to payments under the Workmen's Compensation Act.

We therefore reverse the order denying the employer's motion to dismiss and here dismiss the amended third-party complaints without remandment.

Order reversed; amended third-party complaints dismissed without remandment.

GUILD, P. J., and SEIDENFELD, J., concur.