ELBRIDGE ROBINSON, Plaintiff, *v.* INTERNATIONAL HARVESTER COMPANY, Defendant and Third-Party Plaintiff-Appellant.—(UNITED STATES STEEL CORPORATION, Third-Party Defendant-Appellee.)

Fifth District   No. 76-184

Opinion filed November 24, 1976.

Pope and Driemeyer, of Belleville (W. Thomas Coghill, Jr., of counsel), for appellant.

Walker & Williams, of Belleville (David B. Stutsman, of counsel), for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Third-party plaintiff, International Harvester Inc., appeals from an order granting dismissal of its second amended third-party complaint brought against United States Steel, seeking indemnification.

Elbridge Robinson, plaintiff, an employee of United States Steel, sustained severe injuries while operating an International Pay Loader H-25B—an industrial truck. Plaintiff's amended complaint alleged that International Harvester Inc. was in the business of manufacturing farm and industrial machinery including the International Pay Loader H-25B, and charged International Harvester Inc. with negligence in:

1. Failing to equip the Pay Loader with an operator protective canopy.

2. Negligently designing the Pay Loader so that the machine was unstable.

3. Failing to warn or place safety signs in the machine to alert the operator as to the hazard of raising or tipping.

4. Failing to fulfill the requirements of the standards in the field particularly in regard to operator protection and protective frame performance requirements.

Plaintiff's amended complaint against International Harvester Inc. also alleged a strict liability in tort theory in that certain defects existed in the Pay Loader when it left the possession of International Harvester Inc., which made the machine unreasonably dangerous and proximately caused the plaintiff's injury. These defects were:

1. The Pay Loader did not come equipped with an operator protective canopy.

2. The Pay Loader was designed in such a way that with a full load in the bucket it is precariously balanced over the front axle.

3. The brakes which are controlled by dual, simultaneously acting brake pedals, are in the front drive wheels which when applied will tend to lift the rear of the Pay Loader.

4. There were no directions for operation of the machine, nor were there warning or safety signs on the machine to alert the operator to the hazard of tipping or to guide him in how to prevent the tipping.

International Harvester Inc. (manufacturer) filed a second amended third-party complaint against United States Steel seeking indemnification for any sum that may be adjudged against it as a result of plaintiff's action. The second amended third-party complaint alleged that the plaintiff was employed by United States Steel (employer); that the plaintiff was acting within the scope of employment when injured, and that the Pay Loader was sold to employer by manufacturer several years prior to plaintiff's injury. The Pay Loader was marketed as a multipurpose piece of equipment and had optional equipment available depending on the

purpose for which it was used. The manufacturer further alleged that the Pay Loader was knowingly purchased without the standard optional equipment and that employer knew of the availability of overhead protection devices prior to plaintiff's accident.

It is alleged that any acts or omissions which could make manufacturer liable to the plaintiff would be technical, passive, or secondary and that the loss sustained, if held liable, would be the direct and proximate result of the active, primary, and direct acts or omissions of the employer.

In Count II of its second amended third-party complaint, the manufacturer alleged that certain acts or omissions on the part of the employer were done wilfully, wantonly, and in reckless disregard for the safety of its employees. In essence, as manufacturer concedes in its brief, it is alleged that there was a qualitative difference in the degree of culpability between the conduct of the manufacturer and the conduct of the employer. Therefore, the manufacturer should not be considered *pari delicto* with the employer.

■■■ Illinois has long denied contribution between joint tortfeasors. (*Nelson v. Cook*, 17 Ill. 443; *Miller v. DeWitt*, 37 Ill. 2d 273, 226 N.E.2d 630.) To ameliorate the rather harsh effects of such a rule, the courts allow indemnification by contract or, in the absence of a contract, by implication. (*Gulf, Mobile & Ohio R.R. Co. v. Arthur Dixon Transfer Co.*, 343 Ill. App. 148, 98 N.E.2d 783.) Implied common law indemnity arises in favor of a party whose negligence is passive or secondary and has been placed in a position of potential liability by the act or omission of another tortfeasor whose negligence is primary and the active cause of the plaintiff's injury. *Campbell v. Joslyn Manufacturing & Supply Co.*, 65 Ill. App. 2d 344, 212 N.E.2d 512.

■■ Plaintiff's complaint alleged that the manufacturer breached various duties owed to plaintiff and should be held liable for the damages resulting from this breach. By the very nature of an action for indemnification, the manufacturer seeks to shift the entire loss it may suffer to the employer upon the theory that they both breached duties owed to the plaintiff or that the employer's conduct alone was the proximate cause of plaintiff's injury. (*Linder v. Kelso Burnett Electric Co.*, 133 Ill. App. 2d 305, 272 N.E.2d 196.) Indemnification is permitted when a qualitative difference exists between the negligence of the manufacturer and the negligence of the employer. (*Harris v. Algonquin Ready Mix, Inc.*, 59 Ill. 2d 445, 322 N.E.2d 58.) The terms "active" and "passive" are commonly employed to describe the required difference in conduct. However, "these terms have not obtained precise judicial definition." (*Carver v. Grossman*, 55 Ill. 2d 507, 511, 305 N.E.2d 161.) "Active" and "passive" are terms of art and must be applied in accordance with the concepts worked out by the courts of review upon a case by case basis.

(*Moody v. Chicago Transit Authority*, 17 Ill. App. 3d 113, 307 N.E.2d 789.) We must therefore look to see if in past cases courts have passed on the question of whether the manufacturer of an alleged negligently manufactured or defective product can be deemed passively negligent. If the manufacturer's negligence is active, there can be no recovery by an indemnity action regardless of whether the negligence of the employer is active or passive. *Gillette v. Todd*, 106 Ill. App. 2d 287, 294, 245 N.E.2d 923.

In *Burke v. Sky Climber, Inc.*, 13 Ill. App. 3d 498, 301 N.E.2d 41, *aff'd on other grounds*, 57 Ill. 2d 542, 316 N.E.2d 516, the court affirmed the dismissal of the manufacturer's third-party complaint for indemnity against the employer of the plaintiff's decedent. Plaintiff alleged that the accident was caused by the manufacturer's careless and negligent design, manufacture and sale of its product (scaffold). The manufacturer's third-party complaint alleged that the employer failed to inspect and maintain the scaffold and neglected to warn the employee about the danger. In other words, the employer's active negligence was responsible for the accident to its employee and any negligence of the part of the manufacturer was purely passive. The employer filed a motion to dismiss arguing that the manufacturer had to be guilty of active negligence as a matter of law and therefore no indemnity action could lie. The court dismissed the third-party complaint holding that negligent design and manufacture was active negligence and thus barred the indemnification action:

> "We are impelled to agree with the position taken by CHA [employer] that Sky Climber [manufacturer] is the manufacturer of the scaffold and therefore would be guilty of active negligence in connection with all of the allegations against it in plaintiff's complaint. Simple failure of a person in ordinary circumstances to discover a defect might be described as passive; but, in the type of situation shown here, where Sky Climber itself is the manufacturer, it follows necessarily that the basis of the liability would be the active creation of the defect in the process of manufacture.

> * * *

> " * * * Thus, if plaintiff recovers a judgment against Sky Climber, it would necessarily be predicated upon active negligence. This being true, it follows inevitably that Sky Climber would not be entitled to indemnity as against CHA." 13 Ill. App. 3d 498, 502-03.

Although dealing with a strict liability in tort theory, the court in *Lopez v. Brackett Stripping Machine Co.* (N.D. Ill. 1969), 303 F.Supp. 669, reached a similar conclusion holding that the manufacturer of a product could not be characterized as passively negligent so as to allow an action

for indemnity. Applying the rationale of *Burke v. Sky Climber* to the case at hand, it seems that any negligence involved in the manufacture of the Pay Loader would be active and thus block a third-party claim for indemnification against the employer. It remains to be seen, however, what impact, if any, the multipurpose nature of the Pay Loader or the charge that the employer acted intentionally and with reckless disregard of the consequences might have upon the manufacturer's claim.

The manufacturer contends that the employer, as purchaser, should have ordered and installed an overhead safety canopy since the employer knew to what use the machine would be put. The question being, therefore, did the purchaser-employer have a duty to install safety devices? The court in *Scott v. Dreis & Krump Manufacturing Co.*, 26 Ill. App. 3d 971, 986, 326 N.E.2d 74, held that no such duty exists:

> "Guided by the language of our supreme court in *Rios*, [*Rios v. Niagara Machine & Tool Works*, 12 Ill. App. 3d 739, 299 N.E.2d 86; *aff'd* in 59 Ill. 2d 79, 319 N.E.2d 232] we hold that a manufacturer is under a nondelegable duty to produce a product which is reasonably safe and that such duty is not obviated when a multifunctional machine is placed into the stream of commerce. (See also *Krammer v. Edward Hines Lumber Co.*, 16 Ill. App. 3d 763, 306 N.E.2d 686.) Although the multifunctional nature of a product is one factor to be considered by the trier of fact in determining whether the product is unreasonably dangerous, it does not operate to delegate the duty of a manufacturer to the conduct of third parties."

The manufacturer can not shift the responsibility of installing the necessary safety devices upon the purchaser-employer and thereby retain a passive negligence status. That the Pay Loader is a multifunctional machine does not insulate the manufacturer from liability for its failure to produce a reasonably safe product. Nor does the multifunctional quality magically remove the active-passive negligence distinction developed in *Burke v. Sky Climber, Inc.*, 13 Ill. App. 3d 498, 301 N.E.2d 41, *aff'd on other grounds*, 57 Ill. 2d 542, 316 N.E.2d 516. The determination that any negligence involved in the manufacture of the Pay Loader would be active remains unaffected by the multifunctional nature since the manufacturer cannot delegate to the purchaser-employer the duty to purchase and install equipment necessary for a reasonably safe product.

Regarding the manufacturer's charge that the employer acted wilfully, wantonly, and in reckless disregard for the safety of its employees, the court in *Stevens v. Silver Manufacturing Co.*, 41 Ill. App. 3d 483, 355 N.E.2d 145, disposed of such an argument stating that "the actions of one party do not change the character of the other party's negligence." (*Doerge v. Wabash R.R. Co.*, 4 Ill. App. 3d 914, 282 N.E.2d 226.) For the

manufacturer to maintain a third-party action for indemnification, its negligence must be passive. (*Stewart v. Mister Softee,* 75 Ill. App. 2d 328, 221 N.E.2d 11.) In *Spivack v. Hara,* 69 Ill. App. 2d 22, 216 N.E.2d 173, a negligent driver failed to satisfy the requirement of passivity necessary for indemnification from a second tortfeasor even though the latter was guilty of wilful and wanton negligence. Thus, assuming that the employer was guilty as alleged in the third-party complaint, the manufacturer would nevertheless be denied indemnification because of its "active" negligence in the manufacture of the Pay Loader.

■■ Consequently, we conclude that the lower court properly dismissed the manufacturer's claim for indemnity in regard to the negligence aspects of this case.

Next, we consider those issues raised by Count I of the manufacturer's second amended third-party complaint for indemnity regarding its alleged strict liability to the plaintiff. The active-passive distinction applied in negligence cases, has no application in the realm of strict liability in tort. In *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.,* 62 Ill. 2d 77, 82-84, 338 N.E.2d 857, the court indicated:

> "The major purpose of strict liability is to place the loss caused by the defective products on those who create the risk and reap the profit by placing a defective product in the stream of commerce, regardless of whether the defect resulted from the 'negligence' of the manufacturer. We believe that this purpose is best accomplished by eliminating negligence as an element of any strict liability action * * * [P]erpetuation of ordinary negligence and indemnity concepts in the context of strict liability actions does not recognize the unique nature of such actions and the fundamental differences underlying strict liability and negligence law."

■■ Actions based upon strict liability in tort for unreasonably dangerous or defective products are outside the scope of the active-passive theory of indemnification. Consequently, "third-party actions for indemnity against a subsequent user are not maintainable by the manufacturer or seller of the defective product." *Stevens v. Silver Manufacturing Co.,* 41 Ill. App. 3d 483, 355 N.E.2d 145; *Stanfield v. Medalist Industries, Inc.,* 17 Ill. App. 3d 996, 309 N.E.2d 104; *Kossifos v. Louden Machinery Co.,* 22 Ill. App. 3d 587, 317 N.E.2d 749.

In its brief, the manufacturer contends that if held liable for failure to install certain optional safety equipment, then the only way a manufacturer could protect itself would be to load down its equipment with every conceivable safety device which might be required for every conceivable use. The duty of a manufacturer of industrial machinery is to "adopt any and all devices the absence of which render his product unreasonably dangerous." (*Rivera v. Rockford Machine & Tool Co.,* 1 Ill.

App. 3d 641, 648, 274 N.E.2d 828.) The plaintiff cannot recover merely upon a showing that optional safety devices were available. The plaintiff must prove that the product contained a defective condition when it left the manufacturer's possession which rendered the product unreasonably dangerous and proximately caused the injury. *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.*, 62 Ill. 2d 77, 338 N.E.2d 857.

The courts in *Rios v. Niagara Machine & Tool Works*, 59 Ill. 2d 79, 319 N.E.2d 232, and *Scott v. Dreis & Krump Manufacturing Co.*, 26 Ill. App. 3d 971, 326 N.E.2d 74, both rejected the manufacturer's contention that the purchaser-user was responsible for selecting and installing appropriate safety devices. Producing a reasonably safe product is the nondelegable duty of the manufacturer. Thus, employer's intentional purchase of the Pay Loader without the overhead safety device is no basis for manufacturer's third-party complaint for indemnity against employer.

■■ The manufacturer's allegation that indemnity should be permitted because the employer acted with reckless disregard for the employee's safety has no merit. If established, the manufacturer's claim that the employer misused the machine or allowed various dangerous practices, would be a complete defense to the action brought by the employee. As such, the manufacturer's claim cannot serve as the basis for an indemnity action against the employer-user. *Burke v. Sky Climber, Inc.*, 57 Ill. 2d 542, 316 N.E.2d 516; *Stevens v. Silver Manufacturing Co.*, 41 Ill. App. 3d 483, 355 N.E.2d 145.

The manufacturer relies heavily upon the reference to *Dole v. Dow Chemical Co.* (1972), 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288, cited with apparent approval in *Gertz v. Campbell*, 55 Ill. 2d 84, 302 N.E.2d 40. In *Dole*, the court allowed a chemical company to obtain contribution from the employer of the plaintiff's decedent who died from a poison manufactured by the chemical company. This result is much broader than the narrow holding in *Gertz.* In permitting equitable indemnity where the damages are not separately identifiable, the court partially relied upon a statute (N.Y. Civ. Prac. §1401) which allowed contribution among joint tortfeasors. Since Illinois has no similar statute, it is doubtful that, given the same facts, an Illinois court would have reached a similar conclusion. Furthermore, the decision in *Dole v. Dow Chemical Co.* (1972), 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288, has since been codified by the New York legislature in 1974 (N.Y. Civ. Prac. §§1401-1404).

The manufacturer's argument is not without appeal. In the future, equitable apportionment or contribution may be recognized as a solution for allowing recovery by a manufacturer against a purchaser-user who refuses to purchase available safety equipment when it is necessary.

Such changes in either the realm of the active-passive doctrine for indemnity or the no contribution rule should be decided by the highest court in this State or the legislature of this State.

For the foregoing reasons, we affirm the order dismissing the third-party plaintiff's complaint.

Affirmed.

KARNS, P. J., and EBERSPACHER, J., concur.