(No. 47060.–

LIBERTY MUTUAL INSURANCE COMPANY, Appellee,
v. WILLIAMS MACHINE & TOOL CO., Appellant.

*Opinion filed November 25, 1975.*

78

CREBS, J., took no part.

Howard & French, of Chicago (Richard G. French and Stuart N. Litwin, of counsel), for appellant.

Gerald E. Grashorn, of Chicago (Edward J. Wendrow, Frank L. Butler, and Winston & Strawn, of counsel), for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

In this indemnity action, plaintiff, Liberty Mutual Insurance Company, as subrogee for its insured, Charles Machine Works, Inc. (hereinafter Charles), sued defendant, Williams Machine & Tool Co., seeking reimbursement for monies paid in settlement of suits instituted against Charles by American Glass Company (hereinafter American) and its employees. A jury in the circuit court of Cook County returned a verdict in favor of plaintiff for $69,800. The Appellate Court for the First District affirmed (21 Ill. App. 3d 510) and we granted leave to appeal.

Plaintiff settled the suits against Charles after tendering the defense of those suits to defendant. Those suits arose out of an accident which occurred at Chicago's O'Hare Airport in March, 1961. To facilitate its installation of the window glass in several terminal buildings then under construction, American was utilizing an adjustable work platform, known as a "Skywitch," manufactured by Charles and designed to raise hydraulically loads not exceeding 2000 pounds to heights up to 24 feet. Hydraulic power to lift the Skywitch was generated by a hydraulic pump, manufactured by defendant and installed without alteration by Charles in assembling the Skywitch. Within each pump was a relief valve, supposedly preset by defendant at Charles' request to activate whenever hydraulic pressure exceeded 2000 pounds per square inch. If activated, the valve would shut off the flow of hydraulic oil into the hydraulic cylinders, thus relieving the pressure on the piston rods should the Skywitch encounter an obstruction or have additional weight, in excess of the 2000 pound load limit, placed on it while being raised. It was undisputed that American, in order to install glass at heights greater than 24 feet, had affixed 20 feet of scaffolding to the top of the Skywitch.

According to plaintiff's evidence, the accident at O'Hare occurred when one corner of the Skywitch was obstructed by an aluminum mullion on the terminal building as American employees were raising the Skywitch,

loaded with men, glass and scaffolding, to its maximum extension in order to install the glass in the second floor windows of the buildings. A failure of the hydraulic pump's relief valve permitted pressure far in excess of 2000 pounds per square inch to be transmitted to the piston rods which, being unable to lift the Skywitch further due to the obstruction, became overstressed to the point that they were severely bent, causing collapse of the Skywitch and injury to a number of American employees. Defendant presented no evidence. All three counts of plaintiff's complaint, based on breach of warranty, negligence and strict liability, were submitted, without separate forms of verdict for each count, to the jury, which returned a general verdict in favor of plaintiff.

Although raising a number of issues before the appellate court, defendant states the only issue before us is whether the misconduct of plaintiff's insured precludes an indemnity claim by plaintiff based on strict products liability. Defendant argues that Charles, by failing to warn American that its planned addition of scaffolding to the Skywitch could cause the platform to tip, is guilty of misconduct which was a concurrent cause of the accident, since defendant's relief valve would not have been needed had the Skywitch not tipped and struck the side of the terminal building. Because defendant speaks of that misconduct in terms of both negligence and misuse, we will consider the effect of both categories of conduct upon plaintiff's claim. First, defendant urges that such misconduct is active rather than passive negligence, and that Charles, as a joint tortfeasor guilty of active negligence, should be barred from indemnity in a strict liability action just as it would be in a negligence action. Defendant contends, therefore, that to instruct the jury, as was done here, that as to both the breach of warranty and strict liability counts "any negligence on the part of plaintiff Charles Machine Works that may have contributed to cause injuries through the employees of Charles Machine Works

would not be a defense," constituted reversible error necessitating outright reversal or in the alternative a new trial before a jury instructed that any misconduct of Charles which was a cause of the initial injury would bar recovery by plaintiff against defendant.

We have previously considered the applicability of negligence concepts to strict liability actions, but not in the context present here. In *Suvada v. White Motor Co.* (1965), 32 Ill.2d 612, establishing strict products liability in this State, plaintiffs, the purchasers of a reconditioned tractor-trailer unit, were held to have stated a cause of action for indemnification from the manufacturer of a defective brake for sums paid by plaintiffs in settlement of claims against them resulting from an accident caused by the defective brake. We there noted: " '[Indemnity] is not, however, limited to those who are personally free from fault. A similar rule has been applied to indemnity against a supplier of goods when a retailer or user of the goods incurs liability by reason of negligent reliance upon his proper care.' Indemnity here is not, however, premised on any theory of active and passive negligence. (To require proof that Bendix was actively negligent would be the antithesis of strict liability.)" (32 Ill.2d at 624.) In *Williams v. Brown Manufacturing Co.* (1970), 45 Ill.2d 418, persuaded by the policy considerations which led us to adopt strict tort liability in *Suvada,* we held that "contributory negligence, as it is known in this State, is not a bar to recovery in a strict product liability tort action in Illinois, and the plaintiff need not plead and prove his exercise of due care." (45 Ill.2d at 427.) We did hold, however, that misuse of the product or assumption of risk would bar recovery in a strict liability action. *Williams* was not an indemnity action, but an action in strict liability brought directly by the injured user of the product against the manufacturer.

Unlike either *Suvada* or *Williams,* the present case involves the question of indemnification between two

manufacturers, the producer of the defective component part and the assembler of the finished product, both of whom could have been sued directly in strict liability by the injured party. Defendant urges that since the compensation of a consumer injured by a defective product or held liable for injury caused by the product is not involved in such a situation, the two manufacturers should simply be treated as joint tortfeasors, with no indemnity allowed unless one's negligence is active and the other's passive. We cannot agree. The major purpose of strict liability is to place the loss caused by defective products on those who create the risk and reap the profit by placing a defective product in the stream of commerce, regardless of whether the defect resulted from the "negligence" of the manufacturer. We believe that this purpose is best accomplished by eliminating negligence as an element of any strict liability action, including indemnity actions in which the parties are all manufacturers or sellers of the product. As one authority has observed: "In many jurisdictions, the right of contribution between joint tortfeasors is denied if they are at equal fault, but not denied if the tortfeasor seeking contribution was only passively negligent. The difficulty of applying this test to strict liability cases is that negligence is irrelevant for determining liability. It is a liability based upon the placing into commerce of a product which, if defective, is likely to be unreasonably dangerous under normal use. There is, therefore, no reason why the responsibility should not trace back to the originally responsible party. Since privity is not relevant in strict liability cases, the injured party could have sued the manufacturer, just as well as the party down the distributive chain who sold the product to the injured user. The manufacturer should not be able to escape liability because of this fortuitous selection of defendants by the injured party, and the immediate seller, if sued by the buyer, should be able to get indemnity from the manufacturer." 2 L. Frumer and M. Friedman, Products Liability, sec.

16A(4)(b)(i).

Also supporting our conclusion are several decisions of our appellate courts which have refused to apply negligence concepts to strict liability actions in situations similar to the present case. See *Texaco, Inc. v. McGrew Lumber Co.* (1969), 117 Ill. App. 2d 351; *Kossifos v. Louden Machinery Co.* (1974), 22 Ill. App. 3d 587; *Stanfield v. Medalist Industries, Inc.* (1974), 17 Ill. App. 3d 996; *Burke v. Skyclimber, Inc.* (1973), 13 Ill. App. 3d 498, *aff'd on other grounds* (1974), 57 Ill.2d 542.

While we do not agree with defendant's argument that "actively negligent" conduct on plaintiff's part is sufficient to bar indemnification, we do not intend to imply that a plaintiff's misconduct could never preclude recovery. In our judgment, indemnity here and elsewhere in the chain of distribution is not available to one whose conduct in connection with the product may be said to constitute a misuse of it or an assumption of the risk of its use. While the policy reasons motivating our adoption of strict liability in *Suvada* are somewhat less persuasive here, where we are concerned with ultimate liability as between those in the manufacturer-distributor chain, they are sufficient, in our judgment, to warrant application of the same recovery-barring standards (misuse, assumption of the risk) as we determined in *Williams* ought to preclude recovery by users. Consequently, if plaintiff's conduct here constituted an assumption of the risk or a misuse of the Skywitch, recovery could not be had.

There is, however, no evidence to indicate any reason for plaintiff to have been aware of any defect in the relief valve, and, clearly, plaintiff cannot be thought to have assumed the risk of a defective product. We spoke in *Williams* (p. 425) of misuse of a product as using it "for a purpose neither intended nor 'foreseeable'." (See also *Winnett v. Winnett* (1974), 57 Ill.2d 7; *Lewis v. Stran Steel Corp.* (1974), 57 Ill.2d 94.) The defect here involved was in the relief valve on the hydraulic pump manufactured by

defendant which was designed to stop the upward movement of the Skywitch when its load, or an obstruction, exceeded a preset level—in this instance 2000 pounds per square inch. That such situations were foreseeable is demonstrated by the presence of the relief valve, and it is, in our opinion, clear that even if the scaffolding in some way contributed to the contact with the building, that fact did not constitute a misuse as to the relief valve since its purpose was precisely to stop upward progress of the Skywitch in such emergencies.

In reaching our conclusion in this case we recognize that other courts have spoken of indemnity rights among those in the manufacturing-distributing chain in other terms, including primary-secondary liability (*Burbage v. Boiler Engineering and Supply Co.* (1969), 433 Pa. 319, 249 A.2d 563; *Sorenson v. Safety Flate, Inc.* (1974), 298 Minn. 353, 216 N.W.2d 859; *Kerr Chemicals, Inc. v. Crown Cork & Seal Co.* (1971), 21 Cal. App. 3d 1010, 99 Cal. Rptr. 162), active-passive negligence (*Pearson Ford Co. v. Ford Motor Co.* (1969), 273 Cal. App. 2d 269, 78 Cal. Rptr. 279), or active tortfeasors (*Oregon Farm Bureau Insurance Co. v. E. L. Caldwell & Sons, Inc.* (D. Ore. 1969), 306 F. Supp. 835), and that the results in those cases may have differed from those we would have reached on similar facts. We note, however, that those States permitting contribution among joint tortfeasors, such as California, might reasonably adopt a more restrictive indemnity rule since denial of the complete reimbursement provided by indemnity would not necessarily preclude proportionate recovery by contribution. We do not find cases such as those above cited persuasive, for it seems to us that perpetuation of ordinary negligence and indemnity concepts in the context of strict liability actions does not recognize the unique nature of such actions and the fundamental differences underlying strict liability and negligence law.

In our judgment, the rule we are adopting is a logical

and necessary extension of the principles enunciated in *Suvada* and *Williams*. It does not impose an undue burden on defendant and those similarly situated, for it is they who originated the defective product. Nor does it make them absolute insurers of the safety of their products. Plaintiffs in such indemnity actions must still prove the necessary elements of a strict liability action—that the product contained a defective condition which existed at the time it left defendant's control, rendering the product unreasonably dangerous and proximately causing the injury resulting in plaintiff's liability to the injured party. And while proof of an indemnitee's negligence will not serve to bar a strict liability indemnity claim, proof that he misused the product or assumed the risk of the defect will be an effective bar to recovery.

Defendant urges that the trial court's instructions prevented the jury from considering whether plaintiff's alleged misconduct barred the indemnity it sought. An instruction was given that the negligence of plaintiff or its employees would not be a defense, and that instruction, in light of our earlier statements herein, was correct. The jury was further instructed that the "fact that the Skywitch may have been misused is no defense so long as the misuse was foreseeable." While this instruction is poorly drafted and did not adequately instruct the jury on the defense of misuse, we find no prejudicial error occurred. The evidence is far from conclusive, but it could be inferred that the tipping of the Skywitch into the terminal building was caused by either the added scaffolding, the placement of the Skywitch on muddy ground, the failure to properly utilize the outriggers and leveling jacks or a combination of these factors. Whatever the cause of the tipping, the misconduct, even if attributable to Charles because of its failure to warn American of the danger of added scaffolding, was, as earlier indicated, clearly foreseeable since defendant's relief valve was designed to operate as a safety device in precisely these circumstances. Therefore, with no

evidence in the record to support a defense of misuse, the failure of the trial judge to properly instruct the jury as to that defense was harmless error. As earlier noted, there was no evidence of assumption of risk presented at trial and no request made by defendant for an instruction as to that defense. We find no prejudicial error in the instructions.

The judgment of the appellate court is accordingly affirmed.

*Judgment affirmed.*

MR. JUSTICE CREBS took no part in the consideration or decision of this case.