**Ralph M. KELLY, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION
and Corbin Limited, Defendants.**

Civ. No. 78–160–BLG.

United States District Court,
D. Montana,
Billings Division.

March 20, 1980.

Donald W. Molloy, Berger, Anderson, Sinclair, Murphy, Nelson, Edwards, McGimpsey & Molloy, Billings, Mont., for plaintiff.

R. H. Bellingham, Moulton, Bellingham, Longo & Mather, Billings, Mont., for defendant Gen. Motors Corp.

J. Dwaine Roybal, Keefer, Roybal & Hanson, Billings, Mont., for defendant Corbin Ltd.

## MEMORANDUM AND ORDER

BATTIN, Chief Judge.

This is an action for personal injuries received in the roll-over of a General Motors pickup in which the plaintiff was a passenger. The plaintiff has sued both General Motors and Corbin Limited, claiming that both defendants manufactured defective products which either caused or enhanced his injuries. The plaintiff's complaint sounds solely in strict tort liability against both defendants.

The gravamen of the plaintiff's claim against defendant Corbin is that Corbin manufactured the pants worn by the plaintiff at the time of the accident, and that the burn characteristics of the pants—melting and sticking, rather than burning and falling away—enhanced the severity of the plaintiff's injuries. Defendant Corbin has filed a third-party complaint against Burlington Industries, Inc., in which it is alleged that Burlington manufactured and supplied to Corbin all of the fabric used to manufacture the pants alleged to be defective in plaintiff's complaint. The third-par-

ty complaint further alleges that "[i]f Defendant and Third-Party Plaintiff, Corbin, Limited, is liable to the Plaintiff . . . said liability is based only on the secondary and passive fault of Corbin, Limited, . . and is the proximate result of the primary active and affirmative liability of Burlington Industries, Inc. . . . . ."

Presently before the Court is Burlington's motion to dismiss the third-party complaint. In sum, Burlington advances the position that indemnity for tort liability cannot be sought by a third-party action when the primary complaint sounds in strict products liability. Defendant and third-party plaintiff Corbin, in opposing Burlington's motion to dismiss, argues that indemnity under facts such as those presently before the Court is permissible, and that *Panasuk v. Seaton*, 277 F.Supp. 979 (D.Mont.1968), is specifically applicable to Corbin's claim for indemnity from Burlington. By the instant motion the Court is squarely faced with the question of the applicability of indemnity to strict liability principles under Montana law.

The application of contribution and indemnity principles has been recently examined by the Montana Supreme Court. The Montana Court's discussion of those principles, in which a policy was enunciated which clearly does not favor expansion of third party practice in situations where the plaintiff is prejudiced by such practice, merits the close attention of this Court. In *Consolidated Freightways v. Osier*, 36 St. Rptr. 1810, Mont., 605 P.2d 1076 (Oct. 12, 1979), the Montana Supreme Court held that Montana's comparative negligence statute did not create a right in one tortfeasor to join another tortfeasor for contribution. The Court further concluded that no action for indemnity may be maintained between multiple tortfeasors *in pari delicto*. The Court noted that indemnity was permissible in actions based on negligence where the indemnitee is only passively negligent and the indemnitor is actively negligent. The Court stated:

"Indemnity" shifts the entire loss from one party compelled to bear it to the shoulders of another who should bear it instead. One court has referred to indemnity as contribution "in the extreme form." *United States v. Savage Truck Line, Inc.* (U.S.C.A. 4th, 1953), 209 F.2d 442, 447.

In *Crosby v. Billings Deaconess Hospital* (1967), 149 Mont. 314, 426 P.2d 217, this Court sanctioned a cross-claim for indemnity by the hospital against the manufacturer of a television regulator switch which had burned the mouth of a patient in the hospital. The hospital claimed that it was entitled to indemnity for any damages it might be required to pay the plaintiff due only to the relationship between the plaintiff and the hospital, and not due to any negligence on the part of the hospital. In permitting the claim for indemnity, we quoted with approval the language from *Great Northern Railway Co. v. United States* (D.C.Mont.1960), 187 F.Supp. 690, 693, which said:

"Where the parties are not in pari delicto, and an injury results from the act of one party whose negligence is the primary, active and proximate cause of the injury, and another party, who is not negligent or whose negligence is remote, passive and secondary, is nevertheless exposed to liability by the acts of the first party, the first party may be liable to the second party for the full amount of damages incurred by such acts."

*Consolidated Freightways* at 1815, 605 P.2d at 1081.

The foregoing discussion in *Consolidated Freightways* clearly demonstrates Montana's approval of a limited indemnity doctrine. It is important to note at this point, however, that the *Consolidated* holding is clearly limited to cases in which negligence is an essential element of the claim between the plaintiff and the defendant, and the defendant asserts secondary or remote negligence as a basis for indemnification from one who is primarily negligent. As counsel for defendant Corbin correctly points out, *Consolidated* did not bring about a change in the law of Montana, it merely stated

with greater precision that which had already been developed. The answer to the question before the Court by the instant motion is clearly not a part of that body of Montana indemnity law which has already been developed. In deciding the issues before the Court, I am without the advantage of a body of case law upon which to draw, for the law of Montana focusing upon indemnity effectively finds its outermost limit at the decision of the Montana Supreme Court in *Consolidated Freightways.* However, given the ruling of the Montana Court in *Consolidated* as a first step, and giving due deference to those pronouncements of policy issued by the Montana Court, I feel that I can, with some certainty, decide this question of first impression in a manner wholly consistent with the law of Montana as it may be seen to be developing.

In this case the primary complaint, that of the plaintiff against Corbin, sounds solely in strict products liability. Corbin's third party complaint against Burlington sounds in negligence, in that it is alleged that Burlington's conduct, or negligence, was the primary causative factor of the injuries upon which the plaintiff's complaint is based. Fundamental to this Court's decision on Burlington's motion to dismiss is the distinction between strict liability and negligence as forms of action. That distinction has perhaps been best drawn in *Kossifos v. Louden Machinery Co.*, 22 Ill.App.3d 587, 317 N.E.2d 749 (1974). In *Kossifos*, the plaintiff filed a complaint against Louden sounding in strict products liability. Louden filed a third-party claim against the plaintiff's employer, alleging that the employer was liable to Louden for indemnity under the doctrine of active/passive negligence. The Illinois court held that the active/passive indemnity theory had no application in an action based upon strict liability in tort. The court stated, again drawing the distinction between cases sounding in strict liability and cases sounding in negligence, that:

> Kossifos' amended complaint against Louden sounds in strict liability in tort. Louden's counterclaim against Morrell sounds in negligence. To impose strict

liability on a manufacturer, a plaintiff "must prove that . . . [his] injury or damage resulted from a *condition* of the product, that the *condition* was an unreasonably dangerous one, and that the *condition* existed at the time it left the manufacturer's control." [emphasis by the Court.] *Suvada v. White Motor Co.* (1965), 32 Ill.2d 612, 623, 210 N.E.2d 182, 188. In a cause of action based on ordinary negligence a plaintiff must show that a defendant owed the non-negligent plaintiff a duty of reasonable care and then either *failed to do* something which a reasonably prudent person *would have done*, or *did* something which a reasonably careful person *would not have done* under circumstances identical to those in a given case. [Emphasis by the Court.] *Haymes v. Catholic Bishop of Chicago* (1969), 41 Ill.2d 336, 339, 243 N.E.2d 203. It is obvious that the basis of strict liability in tort is the *condition* of a product whereas the basis of negligence is the *conduct* of a person.

\*　　\*　　\*　　\*　　\*　　\*

Clearly these are two fundamentally different types of torts. They are separate and distinct causes of action and the pleading and proof requirements for each are different. *Mieher v. Brown* (1972), 3 Ill.App.3d 802, 278 N.E.2d 869. In a strict liability situation, the conduct, as such, of the defendant-manufacturer is not in issue. *Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill.2d 443, 266 N.E.2d 897. In a negligence situation, the focus is not on the unreasonably dangerous condition of a product or instrument, but rather on the conduct of the defendant.

\*　　\*　　\*　　\*　　\*　　\*

As a matter of public policy, Illinois still refuses to permit contribution between joint tortfeasors. But some exceptions exist to that policy on theories of indemnity. One such exception is the "active-passive negligence" theory of indemnity (as set forth, for example, in *Campbell v. Joslyn Mfg. and Supply Co.* (1965), 65

Ill.App.2d 344, 212 N.E.2d 512), whereby one jointly negligent tortfeasor whose negligence is passive or secondary may seek indemnity from the other jointly negligent tortfeasor whose negligence is the primary and active cause of a plaintiff's injury. In the instant case Louden seeks to use that exception against Morrell. But the exception applies only where the two tortfeasors are tortfeasors owing to their respective negligences, because the theory essentially involves a comparing of negligences to determine the more causative fault of the same type. Here, however, Louden's potential liability is not based on negligence, and the theory is therefore inapplicable. The theory of "active-passive negligence" is not applicable to compare apples to oranges. *Kossifos*, 317 N.E.2d at 751, 752.

The foregoing discussion from *Kossifos* brings the issue before the Court in this case into clear focus. Burlington entreats the Court to adopt a holding similar to that of *Kossifos*, by finding that, as negligence and strict liability are separate forms of action, requiring different and disparate elements of proof, indemnity, which in a tort context arises solely from a comparison of the negligence of two potentially liable parties, is· fundamentally anithetical to, and hence inapplicable in, an action sounding in strict liability. Corbin, on the other hand, urges that the Court adopt the position that, despite the admitted differences in the forms of action, a weighing of the comparative fault of two potentially liable parties is permissible, and is in fact the most expeditious method of bringing the claims of the parties to resolution.

Analysis of the parties' arguments shows that Burlington's position is the more persuasive. Whereas Corbin has offered little supporting authority for its position, Burlington cites ample authority from other jurisdictions for the proposition that indemnity is not permissible in an action predicated upon strict products liability. Indeed, Burlington's logic is compelling, and, I believe, most in keeping with the announced policies of the Montana courts.

Montana has unequivocally adopted Section 402A of the Restatement of Torts as the rule governing strict products liability. *Brandenburger v. Toyota Motor Sales*, 162 Mont. 506, 513 P.2d 268 (1973). However, the law of judicial decision in Montana was somewhat slow in evolving this now clearly recognizable rule establishing strict products liability as an available claim for relief. The Montana rule perhaps had as its genesis *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121 (9th Cir. 1968). The *Davis* case was an action by a consumer against the manufacturer of a polio vaccine seeking damages for plaintiff's contraction of polio after taking the vaccine. Although the case arose in the District of Idaho, it was stipulated that Montana law governed the case. In electing to adopt § 402A of the Restatement (Second) of Torts as the applicable rule, the Court of Appeals stated:

Faced with the absence of controlling state precedent, we choose to assume that Montana would follow the majority of other states in finding that liability can attach to the sale of drugs in either tort or warranty . . . . .

The clearest statement of the law as it exists today is in our view that set forth in the Restatement (Second) of Torts (1965). *Davis*, 399 F.2d at 127

In a footnote the Court of Appeals observed further that

[i]n vicariously creating state law in such cases, we must look to the same sources that would be used by the state court— Restatement of Law, treatises, law review commentary and both state and federal decisions. [Citations omitted.] We have been proven wrong before when we predicted that a state court would refuse to follow a more enlightened rule of personal injury recovery. 399 F.2d at 127, n.9.

The disclaimer offered by the Ninth Circuit in the *Davis* case has proven, in retrospect, to be unnecessary, for Montana has adopted that "more enlightened rule of personal injury recovery." In yet another federal case, *Hornung v. Richardson*, 317 F.Supp. 183 (D.Mont.1970), then Chief

Judge Russell E. Smith predicted the adoption of the Restatement rule of strict products liability, and indeed began the impetus of Montana jurisprudence toward acceptance of the strict liability rule.

> In the absence of a controlling decision of the Supreme Court of the State of Montana, the federal courts in Montana sitting in diversity cases have looked to and adopted as the applicable rule of law in Montana the Restatement of the Law of Torts, Second, and the strict liability rule announced therein. The strict liability rule will be applied in this case. *Hornung*, 317 F.Supp. at 184.

Finally, in 1973, the Montana Supreme Court decided *Brandenburger v. Toyota Motor Sales, supra*. *Brandenburger* firmly established the Restatement rule as Montana law.

> The trend seems to be to adopt the theory of strict liability and it has now been adopted by a majority of the states.
>
> In consideration of the instant case as to the adoption of the doctrine of strict liability, we first look to the definition of that theory. We adopt the definition, as other jurisdictions have, set forth in 2 Restatement of Torts 2d § 402A: . . .

*Brandenburger*, 162 Mont. at 513, 513 P.2d at 272.

In adopting the doctrine of strict liability as Montana law, the Supreme Court explicitly outlined the policy underlying its decision in favor of the doctrine. Quoting from *Lechuga, Inc. v. Montgomery*, 12 Ariz.App. 32, 467 P.2d 256, 261, the Court reasoned that:

> " 'It is apparent from a reading of the Restatement, and the leading cases on this subject, that the doctrine of strict liability was evolved to place liability on the party primarily responsible for the injury occurring, that is, the manufacturer of the defective product. This, as Justice Traynor stated in his concurring opinion in *Escola v. Coca Cola Bottling Co. of Fresno*, 24 Cal.2d 453, 150 P.2d 436 (1944), is based on reasons of public policy:

> ' "If public policy demands that a manufacturer of goods be responsible for their quality regardless of negligence there is no reason not to fix that responsibility openly." 150 P.2d, at 441.

> 'These public policy considerations have been variously enumerated as follows:

> '(1) The manufacturer can anticipate some hazards and guard against their recurrence, which the consumer cannot do. Restatement, supra, comment c.

> '(2) The cost of injury may be overwhelming to the person injured while the risk of injury can be insured by the manufacturer and be distributed among the public as a cost of doing business. *Greenman v. Yuba Power Products, Inc.* 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1962).

> '(3) It is in the public interest to discourage the marketing of defective products. *Escola v. Coca Cola Bottling Co. of Fresno*, supra.

> '(4) It is in the public interest to place responsibility for injury upon the manufacturer who was responsible for its reaching the market. *Greenman v. Yuba Power Products, Inc.*, supra.

> '(5) That this responsibility should also be placed upon the retailer and wholesaler of the defective product in order that they may act as the conduit through which liability may flow to reach the manufacturer, where ultimate responsibility lies. *Vandermark v. Ford Motor Co.* 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 (1964).

> '(6) That because of the complexity of present day manufacturing processes and their secretiveness, the ability to prove negligent conduct by the injured plaintiff is almost impossible. *Escola v. Coca Cola Bottling Co. of Fresno*, supra.

> '(7) That the consumer does not have the ability to investigate for himself the soundness of the product. *Santor v. A and M Karaghensian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965).

> '(8) That this consumer's vigilance has been lulled by advertising, marketing devices and trademarks. Concurring opinion, Lockwood, J., *Nalbandian v. Byron*

*Jackson Pumps, Inc.*, 97 Ariz. 280, 399 P.2d 681 (1965).

'Inherent in these policy considerations is not the nature of the transaction by which the consumer obtained possession of the defective product, but the character of the defect itself, that is, one occurring in the manufacturing process and the unavailability of an adequate remedy on behalf of the injured plaintiff.'" *Brandenburger*, 162 Mont. at 514–515, 513 P.2d at 273.

It is perfectly evident, then, that the strict liability doctrine has been adopted in Montana in satisfaction of significant public policy concerns. And the two policy concerns foremost in the reasoning of the Montana court are those of placing the risk of economic loss on the entity best able to insure against such loss, and protection of persons injured by defective or inherently dangerous products by providing a form of action that does not necessitate detailed technical information in order to state a claim, as might an action in negligence, or necessitate discovery of processes or persons wholly remote to the injured person in order to prevail on a claim. Because a products liability action is predicated upon the *condition* of the product in the hands of the injured party, and not the ultimate *fault* of any given defendant arising from such defendant's *conduct*, the announced policies of the Montana court are well served by the adoption of the doctrine of strict liability. In such an action, a plaintiff need only sue that person or enterprise in the chain of distribution of a given product of which he has knowledge or with which he has had contact. Further, in proving his claim an injured party need prove only that a defect existed in the product at the time it left the hands of the individual or enterprise of which the plaintiff has knowledge, and that the defect was the proximate cause of injury to the plaintiff. An injured plaintiff need prove no negligence in order to prevail in his claim; legal fault is not a function of conduct, but rather a function of product condition. Inquiry into the reason for the condition of a given product, other than conditions brought about by the plaintiff, have no place in an action sounding in strict liability, for such inquiry is ultimately such as to impute fault, whether active or passive, to the condition of the product in suit. Such a mixing of legal theories works contrary to the policies underlying the strict liability doctrine, and stands to pollute and even frustrate the process by which the injured plaintiff claims against a manufacturer and proves a claim for relief arising from product-caused injuries. This reasoning extends as well to third party actions for indemnity. An action for indemnity can be pleaded on only one of two bases: contractual agreement for indemnification or active/passive negligence. The third-party complaint presently before the Court is founded upon allegations of active/passive negligence. Proof of the allegations of the third-party complaint as an adjunct to the plaintiff's claim against defendant Corbin places before the jury the question of fault—that impermissible inquiry into the conduct of both the defendant and the third-party defendant—and invites the jury to stray from consideration of the less restrictive elements of the plaintiff's claim against the defendant *he has elected to sue*. Even the possibility of prejudice to a plaintiff by the distraction a claim for indemnity may raise from the primary question of product condition is clearly contrary to the announced policy of the Montana courts, and is clearly, therefore, sufficient basis for dismissing the third-party complaint.

A conclusion similar to that reached in this decision has been reached by other jurisdictions when faced with the same question presented here. An example of the foregoing may be found in *Skinner v. Reed-Prentice Package Mach. Co.*, 40 Ill.App.3d 99, 351 N.E.2d 405 (1976). In that case an employee was injured in a mishap involving an injection molding machine. The employee sued the manufacturer of the machine on a strict tort liability basis. The manufacturer filed a third-party complaint against the employer, seeking contribution. The employer moved to dismiss the third-party complaint, which motion was granted by the court below. In affirming the ruling, the Illinois Supreme Court emphasized that the policy basis of strict liability, to be effective, necessarily entails the elimination

of negligence as an element of any strict liability action, including indemnity actions in which the parties are manufacturers or sellers of the product.

Thus, if we are to build with logical consistency upon the foundation of this policy, negligence must necessarily be omitted as an element of any strict liability action and in connection with claims for indemnity arising therefrom. *Skinner*, 351 N.E.2d at 408.

In yet another case, *Liberty Mutual Insurance Co. v. Williams Machine and Tool Co.*, 62 Ill.2d 77, 338 N.E.2d 857 (1975), the question of indemnification between two manufacturers, one the producer of a component part, the other the producer of the finished product, which is analogous to the case presently before the Court, was addressed. In denying indemnity, the Illinois Court stated that:

> Defendant [in the subrogation action for indemnity] urges that since the compensation of a consumer injured by a defective product or held liable for injury caused by the product is not involved in such a situation, the two manufacturers should be simply treated as joint tortfeasors, with no indemnity allowed unless one's negligence is active and the other's passive. We cannot agree. The major purpose of strict liability is to place the loss caused by defective products on those who create the risks and reap the profits by placing a defective product in the stream of commerce, regardless of whether the defect resulted from the "negligence" of the manufacturer. We believe that this purpose is best accomplished by eliminating negligence as an element of any strict liability action, including actions in which the parties are all manufacturers or sellers of the product. 338 N.E.2d at 859.

The reasoning of each of the foregoing cases, which is obviously dedicated to the purpose of effectuating the policy bases underlying the doctrine of strict liability, has itself become doctrine in at least one jurisdiction.

And since actions founded on strict liability for defective and unreasonably dangerous products are outside the active-passive theory of indemnity, third party actions for indemnity against a subsequent user are not maintainable by the manufacturer or seller of the defective product. *Stevens v. Silver Mfg. Co.*, 41 Ill.App.3d 483, 355 N.E.2d 145 (1976).

Although, as stated previously, the Montana Supreme Court has never squarely addressed the issue presented here, that Court has at least provided some insight as to its philosophical assessment of strict liability. In *Brown v. North American Manufacturing Co.*, Mont., 576 P.2d 711 (Mont.1978), a case which may fairly be said to be Montana's leading products liability case, the Montana court criticized the introduction of negligence concepts into a strict liability case. In that case an instruction relating to assumption of risk which, by its language, inserted a question as to the plaintiff's conduct, or negligence, was disapproved on grounds that jury confusion concerning contributory negligence might be improperly introduced into a strict liability case by such instruction. *Brown, supra* at 720, 721. I wholly agree with Burlington's position that the possible jury confusion disapproved by the Montana court in *Brown* is miniscule when compared to the potential for jury confusion in a strict liability case in which the court also permits a defendant to bring in a third-party defendant on an active/passive negligence theory. It is of further concern that if permitted indemnity would effect what amounts to a substitution of defendants in a given case. In the early paragraphs of this opinion, the *Consolidated Freightways* decision was discussed in terms of the present posture of the law of contribution and indemnity in Montana. Integral to the *Consolidated Freightways decision* was a reaffirmance of a plaintiff's *right*, in a state which recognizes joint and several tort liability, to select the defendant or defendants against whom he wishes to proceed. The substitution of defendants worked by a third party indemnity action in connection with a complaint predicated on strict liability is antithetical to the right of the plaintiff to select his defendant, and, if permitted, would prejudice a plaintiff.

I would observe, as did the Ninth Circuit Court of Appeals in *Davis v. Wyeth Labora-*

*tories, Inc., supra*, that I may be proved wrong when, in vicariously creating state law, I predict the conclusion of the Montana Supreme Court when it is confronted by a similar question. It is, however, my conclusion that the more enlightened rule rejects the interjection of negligence or conduct-based considerations into an action sounding solely in strict liability. It is for that reason that I find the position of Burlington Industries to be well taken, and that the third-party complaint is properly dismissed. Therefore,

IT IS ORDERED that the third-party complaint in the above-captioned case be, and the same hereby is dismissed.