Rose Maree JONES, Plaintiff,

v.

AERO–CHEM CORPORATION, and
Athea Laboratories, Inc.,
Defendants.

AERO–CHEM CORPORATION, and
Athea Laboratories, Inc.,
Third–Party Plaintiffs,

v.

EMSON RESEARCH COMPANY,
Third–Party Defendant.

No. CV–86–188–GF.

United States District Court,
D. Montana,
Great Falls Division.

Nov. 27, 1987.

Zander Blewett, Hoyt & Blewett, Great Falls, Mont., for plaintiff.

Jack L. Lewis, Jardine, Stephenson, Blewett & Weaver, Great Falls, Mont., for defendants and third-party plaintiffs.

Gary M. Zadick, Ugrin, Alexander, Zadick & Slovak, Great Falls, Mont., for third-party defendant.

MEMORANDUM AND ORDER

HATFIELD, District Judge.

This strict products liability action is before the court on motion of the third-party defendant, Emson Research Company (hereinafter "Emson"), requesting the court to enter summary judgment in that entity's favor with respect to the claim, sounding in indemnity, advanced against it by defendants/third-party plaintiffs, Aero/Chem Corporation and Athea Laboratories, Inc. (collectively referred to as "Aero/Chem").

FACTUAL BACKGROUND

The plaintiff, Rose Maree Jones, an officer of the United States Customs Service, was allegedly injured when a tear gas cannister she was carrying discharged upon

incidental contact with another object. Ms. Jones seeks damages for the injuries she sustained from Aero/Chem, the commercial entity which purportedly designed, manufactured and marketed the cannister. Ms. Jones seeks to impose liability upon Aero/Chem under a theory of strict liability in tort. By way of third-party complaint, Aero/Chem seeks indemnity from Emson, the designer/manufacturer of a valve incorporated by Aero/Chem into the finished cannister, for any damages Ms. Jones may ultimately recover against Aero/Chem.[1]

Emson takes the position that Aero/Chem is precluded, as a matter of law, from seeking indemnity or contribution from Emson. In addition, Emson seeks to impress upon the court that no genuine issue of material fact exists with respect to the issue of causation. Emson asserts that any defect in the cannister was caused, not by any defect in the valve Emson manufactured, but from improper design and assemblage of the cannister.

ANALYSIS

## I.

Jurisdiction of this action is founded on diversity of citizenship. Montana substantive law is, therefore, controlling. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The primary issue presented for determination is whether, under Montana law, the manufacturer/assembler of a finished product, held strictly liable to a third party for damages caused by a defective component part integrated into the finished product, is entitled to recover indemnity from the manufacturer of the defective component part. To date, the Montana Supreme Court has not addressed this specific question. The decisional law extant in Montana, however, provides clear guidance as to what the Montana Supreme Court would

conclude if presented with this precise issue.[2]

The State of Montana has unequivocally adopted Section 402A of the RESTATEMENT OF TORTS as the rule governing strict products liability. *Brandenburger v. Toyota Motor Sales*, 162 Mont. 506, 513 P.2d 268 (1973). In adopting the doctrine of strict products liability, the Montana Supreme Court recognized the strong public interest in placing responsibility for injury proximately caused by a defective product upon the manufacturer responsible for that product reaching the marketplace. 162 Mont. at 514, 513 P.2d 268.

The State of Montana has also adopted the equitable principle of indemnity which recognizes the right of one compelled to pay damages caused by another to shift the burden of that loss to the responsible party. *See, Poulsen v. Treasure State Industries, Inc.*, 626 P.2d 822, 829 (Mont.1981). The principle of indemnity, like the doctrine of strict products liability, is bottomed on the desire of the public to impose liability for an injury on the person or entity primarily responsible for that injury.

Recognition of the fact that the doctrine of strict products liability and the principle of indemnity are premised on the same public concern, leads to the logical conclusion that the public interest is best served by allowing indemnity based on the principle of strict products liability. There is nothing inherent in the principle of indemnity which makes it inapplicable to strict products liability actions, nor vice versa. Not only are the principles compatible but they both serve to accomplish the same result.

It is generally recognized that a person or an entity in the chain of distribution of a defective product, held liable for injuries sustained by the user of that product, has a right to maintain an action for indemnifica-

---

**1.** The third-party complaint of Aero–Chem advances both a claim for contribution and a claim for indemnity. Whether Montana recognizes a right to contribution in strict tort products liability cases presents a correlative issue not specifically addressed by the parties. More importantly, in the memorandum addressing the motion *sub judice,* Aero/Chem implicitly concedes its third-party complaint is predicated

solely on a claim for indemnification. Accordingly, the court addresses only the propriety of Aero/Chem's claim for indemnification.

**2.** The court's analysis assumes the manufacturer of the finished product was not itself negligent in either creating or failing to discover the defect of the component part.

tion against the manufacturer of the defective product. *See, e.g., Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.*, 62 Ill.2d 77, 338 N.E.2d 857 (1975); *McCrory Corp. v. Girard Rubber Corp.*, 225 Pa.Super. 45, 307 A.2d 435 (1973), *affirmed*, 459 Pa. 57, 327 A.2d 8 (1974); *Farr v. Armstrong Rubber Co.*, 288 Minn. 83, 179 N.W.2d 64 (1970). This "upstream" indemnification fosters the policy behind strict products liability by placing final responsibility for injuries caused by a defective product upon the entity initially responsible for placing that product into the stream of commerce.

Although it has not specifically addressed the principle of "upstream" indemnification, the Montana Supreme Court alluded to its availability in Montana in the seminal case of *Brandenburger v. Toyota Motor Sales*, 162 Mont. at 514–515, 513 P.2d 268. Citing with approval *Escola v. Coca Cola Bottling Co. of Fresno*, 24 Cal.2d 453, 150 P.2d 436 (1944), the court in *Brandenburger* noted that a consumer, injured by a defective product, may place responsibility not only on the manufacturer of that product but also upon the retailer or wholesaler of that product. *Id.* The import in allowing an injured consumer to hold a retailer or wholesaler of a defective product liable lies, *inter alia*, in the fact that "[the retailer and wholesaler] may act as a conduit through which liability may flow to reach the manufacturer, where ultimate responsibility lies." *Id.* The persons or entities in the chain of distribution of a defective product can be an efficient "conduit" for the imposition of liability on a manufacturer only if they in turn are allowed to seek indemnification from the manufacturer.[3]

There exists no logical reason to deny the manufacturer/assembler of a final product, held liable for injuries sustained by a third party and proximately caused by the defective condition of a component part, the same right to indemnification enjoyed by those individuals in the chain of distribution. Indemnification in such instances fosters the desire of the public to place responsibility for injury caused by a defective product on the manufacturer of that product. *See, McCaffery v. Illinois Central Gulf Railroad Company*, 71 Ill. App.3d 42, 27 Ill.Dec. 99, 388 N.E.2d 1062 (1979); *see also, Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182 (1965). The public interest in holding the manufacturer of a defective product responsible for damages caused by that product does not wane because an injured third party chooses to sue the manufacturer/assembler of a final product, or any entity in the chain of distribution, instead of the manufacturer of the defective component part.

As an alternate argument, Emson asserts the principle of strict products liability, as a theory of liability, is not available between parties dealing in a commercial setting. *Ergo*, Emson submits, the principle is likewise unavailable in the commercial setting as a vehicle for obtaining indemnity. The thrust of Emson's argument lies in the contention that the consumer protection objective in which strict products liability has its genesis is absent in the commercial setting. Unlike the average consumer who is at the mercy of the products manufacturer, the manufacturer/assembler which incorporates a defective component part into a finished product, Emson submits, is equally able to allocate any loss occasioned by that particular product as is the manufacturer of the component part. Accordingly, Emson urges that as between manufacturers no right to indemnity should be recognized.

This court is unpersuaded by Emson's argument, or the rationale expressed by those courts which have adopted the proposition proffered by Emson. The court is convinced that if presented with the issue *sub judice*, the Montana Supreme Court

---

**3.** Aero–Chem argues the decision of *Kelly v. General Motors Corp.*, 487 F.Supp. 1041 (D.Mont.1980), stands for the proposition that "upstream" indemnification in a strict products liability action is not allowed in Montana. The decision in *Kelly* dealt with the propriety of allowing a defendant to interject negligence into a strict products liability action via a third-party complaint for indemnity. The holding in *Kelly* denying the utilization of a third-party complaint to interject negligence into a strict products liability is correct. To the extent, however, that certain dicta in *Kelly* might be read as to not allow "upstream" indemnification in a proper strict products liability situation, this court respectfully disagrees.

would be compelled to conclude that the manufacturer of a defective component part may be held strictly liable, in either a direct action by an injured consumer, or in an action for indemnification by the manufacturer of a finished product which incorporated the defective component part.[4]

Emson correctly notes that in formulating the RESTATEMENT, SECOND, TORTS § 402A, the American Law Institute declined to express, and continues not to express, an opinion as to whether the rules of strict tort liability apply to the seller of a component part of a product to be assembled. The Institute's observation, of course, was based upon the paucity of decisional law addressing the issue. At present, a split of authority has evolved with respect to that issue. *See, e.g., Kaiser Steel Corporation v. Westinghouse Electric Corporation,* 55 Cal.App.3d 737, 127 Cal.Rptr. 838 (1976) (no right to indemnification as between manufacturer of finished product and manufacturer of component part); *S.A. Empresa v. Walter Kidde & Co., Inc.,* 690 F.2d 1235 (9th Cir.1981) (applying California law); *contra, see, e.g., Liberty Mutual Insurance Co. v. Williams Machine and Tool,* 62 Ill.2d 77, 338 N.E.2d 857 (1975) (recognizing right to indemnification); *Union Supply Co. v. Pust,* 196 Colo. 162, 583 P.2d 276 (1978); *Burbage v. Boiler Engineering & Supply Co.,* 433 Pa. 319, 249 A.2d 563 (1969); *Rowland Truck Equipment, Inc. v. Everwear Products, Inc.,* 468 So.2d 393 (Fla.App. 1985).

Having considered the justifications expressed by those courts which have addressed the propriety of allowing indemnification between two manufacturers, either of which could have been held directly liable to an injured consumer under strict liability in tort principles, the court finds the better reasoned rule to be that which allows indemnification. No compelling justification exists which warrants relieving

the manufacturer of a defective product from responsibility for damages caused by that entity's product. Ultimate liability for injury emanating from a defective and unreasonably dangerous product should be placed upon that entity responsible for creation of the product. *See, Liberty Mutual Insurance Co. v. Williams Machine and Tool, supra,* 338 N.E.2d at 860. Ultimate responsibility should not be fixed simply by the fact an injured consumer chooses to seek compensation from one commercial entity rather than another. This court is confident the Montana Supreme Court would view as more enlightened, that rule which allows, as a general proposition, the manufacturer/assembler of a finished product to seek indemnification from the manufacturer of a component part that was defective at the time it left the component manufacturer's hand and integrated as part of that finished product.

## II.

■ Recognition of the right of the manufacturer/assembler of a defective product, which causes injury to a third person, to bring an action for indemnification against the manufacturer of a defective component part of the final product, brings to issue the question of whether the manufacturer/asembler's theory of indemnity may be based upon strict liability in tort. Obviously, the most logical answer to that query is that an entity seeking "upstream" indemnification may base his theory of recovery on strict products liability. Nonetheless, the question has caused some consternation among the courts. This consternation has its genesis in the misguided attempts to analyze the issue of indemnity in actions founded in strict products liability in terms of the rules which have evolved with respect to the issue of indemnity in the area of negligence. Because negligence and strict products liability are distinct torts, such an analysis is neither pragmatic nor logical.

---

4. When presented with an issue of substantive state law as to which there has not been a definitive ruling by the Montana Supreme Corut, this court, guided by all available sources of Montana law, must undertake to predict how the Montana Supreme Court would rule if confronted with that issue of law. *See, Meredith v.*

*Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943); *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir.1980); *Molsbergen v. U.S.,* 757 F.2d 1016, 1020 (9th Cir. 1985), *cert. dismissed,* 473 U.S. 934, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985).

Liability in a negligence action is based upon a person's conduct. Where the conduct of two or more individuals causes an injury-producing wrong, those individuals are considered joint tortfeasors and are held jointly and severally liable. Mont. Code Ann. § 27–1–703 (1985).

Montana, however, allows indemnification between joint tortfeasors in actions founded on negligence in two situations: (i) when there exists a contractual agreement for indemnification, and (ii) when the tortfeasor seeking indemnification establishes that he was passively negligent while the tortfeasor from whom indemnity is sought was actively negligent. *See, Crosby v. Billings Deaconess Hospital,* 149 Mont. 314, 426 P.2d 217 (1967); *Consolidated Freightways v. Osier,* 185 Mont. 439, 605 P.2d 1076 (1979). The latter equitable principle of active/passive negligence allows a joint tortfeasor whose negligence was a remote, passive and secondary cause of an injury, but who is nevertheless exposed to liability by the acts of a joint tortfeasor, to maintain an action for indemnification against that joint tortfeasor, whose negligence was the primary, active and proximate cause of the injury. *Consolidated Freightways v. Osier,* 605 P.2d at 1081.

Liability in products cases, on the other hand, is a liability based upon the placing into commerce a product which, if defective, is likely to cause injury under normal use. Because the liability in products cases is imposed regardless of whether the defect resulted from the negligence of the manufacturer, it focuses solely on the condition of the product.

The foregoing distinction in mind, one must ask what utility the principle of active/passive negligence would have in the area of strict products liability. The fault-weighing process which the principle of active/passive negligence is designed to accomplish must be considered irrelevant in determining the propriety of granting the right to seek indemnification in the strict product liability context. *See, McCaffrey v. Illinois Central Gulf Railroad Co.,* 388 N.E.2d at 1067. Because liability for a defective product is imposed regardless of whether the defect resulted from the negli-

gence of the manufacturer, negligence is irrelevant for determining liability. Application of the principle of active/passive negligence to the strict products liability context is not only impossible, but serves to frustrate the policy of shifting the full loss caused by a defective product to the manufacturer of that product. As the court in *Suvada v. White Motor Company,* 32 Ill. 2d 612, 210 N.E.2d 182 (1965), aptly stated in discussing the propriety of applying the principle of active/passive negligence in an indemnification action predicated on strict products liability:

> Indemnity here is not, however, premised on any theory of active and passive negligence. (To require proof that [the indemnitor] was actively negligent would be the antithesis of strict liability.)

210 N.E.2d at 189.

The manufacturer/assembler of a final product, who is compelled to pay the damages sustained by a third party, must be allowed to assume the same position as an injured consumer and utilize the doctrine of strict products liability to recover his loss. Just as contributory negligence is not available in Montana as a defense in a strict products liability action brought by an injured consumer, *see, Zahrte v. Sturm, Ruger & Co., Inc.,* 203 Mont. 90, 661 P.2d 17 (1983), neither is it available as a defense in an action for indemnification. To argue that the principle of active/passive negligence governs the right to seek indemnification is to attempt to inject contributory negligence into strict products liability; a result which is both illogical, and contrary to Montana law.

### III.

As the manufacturer/assembler of a final product which may be compelled to pay for injuries sustained by a third party and caused by the defective condition of a component part integrated into the final product, Aero/Chem may maintain an action for indemnification against the manufacturer of that component part, *i.e.,* Emson. In order to recover its loss, however, Emson must ultimately prove the necessary elements of a strict products liability action—that the product contained a defective condition which existed at the time it

left Aero/Chem's control, rendering the product unreasonably dangerous and proximately causing the injuries to the injured party.

There exists genuine issues of material fact in the present case with respect to each of these essential elements. Accordingly, summary judgment on the issue of liability is inappropriate. Therefore,

IT IS HEREBY ORDERED that the third-party defendant's motion for summary judgment be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that trial upon the third-party complaint for indemnity shall be severed from trial of the principal action. Accordingly, upon disposition of the principal action, the court shall set an appropriate schedule for disposition of the third-party action.