TERRY W. McGREGOR, Plaintiff, v. RUAN LEASING COMPANY, Defendant and Counterplaintiff-Appellee (International Harvester Company, Defendant and Counterdefendant-Appellant).

First District (5th Division)   No. 1—89—0601

Opinion filed June 15, 1990.—Rehearing denied August 14, 1990.

Arnstein & Lehr, of Chicago (Louis A. Lehr, Jr., Arthur L. Klein, and John T. Wagener, of counsel), for appellant.

Rooks, Pitts & Poust, of Chicago (Terrence J. Madden, of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

This appeal follows entry of a directed verdict in favor of Ruan Leasing Company (Ruan) on its counterclaim for indemnity against Navistar International Corporation (Navistar), formerly known as International Harvester Corporation, arising out of a strict products liability action in which Navistar and Ruan were named as defendants.

We reverse and remand.

On February 9, 1978, Terry W. McGregor fell, injuring his back, when, while exiting from a truck manufactured by Navistar, the top portion of an aluminum handhold or "grab handle," used to aid descent from the truck's cab, became detached because of a missing screw.

The grab handle was vertically mounted to the upper portion of the side of the cab, immediately behind the driver's door, and consisted of upper and lower handholds. The top part of the upper grab handle was attached to the cab by a single screw as was the bottom part of the lower grab handle. The top of the lower grab handle and the bottom of the upper grab handle were fastened by a shared third screw.

The truck involved was a 1977 model purchased by Ruan from Navistar. Ruan had leased the truck to Union Carbide Corporation (Union Carbide), pursuant to a vehicle lease and service agreement which obligated Ruan to provide all maintenance.

McGregor subsequently filed a two-count complaint, as amended, sounding in products liability against Navistar and Ruan. Count I, against Navistar, alleged the truck was unreasonably dangerous because of "insufficiencies" respecting the grab handle, the grab handle "retention system," instructions respecting inspection, repair, maintenance, and service of the grab handle, and the truck's "entry-exit system." Count II, against Ruan, cited the vehicle lease and service agreement between Ruan and Union Carbide and alleged, in addition

to the same insufficiencies above, that the truck was defective because the grab handle was insufficiently attached, was insufficiently "torqued or tightened," and was "insufficiently serviced, repaired, and maintained."

In turn, Ruan filed a counterclaim, as amended, against Navistar for indemnity. Ruan alleged no changes or modifications to the truck's grab handle had been made between the time the truck was purchased by Ruan from Navistar and the time of McGregor's injury. Further, Ruan alleged it had serviced and maintained the truck in a manner intended or reasonably foreseen by Navistar.

The matter proceeded to trial before a jury with the indemnity aspect severed pending the jury's determination as to liability on McGregor's complaint.

At trial, testimony was presented that, prior to delivery of the truck to Union Carbide, Ruan caused the truck to be painted by New-Look Auto & Truck Repair (New Look). In conjunction with the painting process, the screw securing the top part of the upper grab handle had been loosened. Testimony regarding that process and its possible effects was provided through the evidence deposition testimony of Donald Paugh, vice-president of New Look, and the trial testimony of Edward C. Caulfield, a mechanical engineer, and John Michael Stilson, a safety and automotive engineering consultant.

Paugh estimated that the particular truck involved was painted on May 14 or 15, 1977. Paugh testified to having had observed all 33 trucks which had been painted by New Look for Ruan, but stated he did not observe every phase of the painting process. In describing the normal painting process, Paugh stated the lower grab handles were entirely removed in order to paint the truck cabs. That entailed removing the screw which also secured the lower part of the upper grab handle. With respect to the remaining screws securing the top part of the upper grab handle, it was New Look's policy only to loosen that screw sufficiently to permit the upper grab handle to be rotated upward, away from the area of the cab to be painted, and taped near the roof of the cab. After the painting, the upper grab handle would be rotated into the proper position and both the lower and upper grab handles would be attached by the same screws using a Phillips-head screwdriver. The screws were tightened as tight as they could be by hand. New Look was not given any torque specifications from Navistar or Ruan regarding the required tightness of the screws.

Caulfield testified as an expert on behalf of Navistar regarding how the loosening of screws might affect the necessary "preload," achieved through applying torque, or tightening, to the screws to ade-

quately secure the grab handle. Caulfield testified "9 to 11 foot-pounds" of torque would be in excess of the amount of tightening of the screws necessary to secure the grab handle to sustain the truck operator's weight and any amount of added weight caused by the operator pulling on the handle. Caulfield acknowledged that a person using a hand-held Phillips-head screwdriver would be able to achieve the proper level of torque to secure the screws. He indicated that an average individual could achieve approximately "100-inch pounds," or "8½ footpounds," using such a screw driver. Caulfield also testified that the operator and service manuals for the truck did not set out or recommend the proper torque for the grab handle screws. In reference to the painting process in which the screw securing the top of the grab handle was loosened and, after painting, retightened, Caulfield testified that, if the screw were retightened by hand as tightly as possible, any loss of integrity to the joint by loosening the screw would be restored.

Stilson was qualified as an expert and testified on plaintiff's behalf as to his opinions concerning alleged defects which might have contributed to the cause of plaintiff's injury. Stilson determined that the grab handle fastening system was sensitive to road vibrations and that such vibrations could cause a screw to loosen, unwind, and fall out. He based his opinion on several tests he conducted using a body panel of a truck similar to the truck from which plaintiff had fallen. Stilson testified that, in the vibration tests, screws tightened to 9 to 11 footpounds of torque did not completely vibrate out of the body panel.

At the close of evidence, the trial judge instructed the jury, pursuant to an Illinois Pattern Jury Instruction, that liability against defendants was premised on one or more of the following defective conditions:

"a. The grab handle fastener system on the truck was insufficient;

b. The instructions regarding inspection or torquing of the grab handle fastener system on the truck were insufficient; and

c. The grab handle was structurally insufficient." Illinois Pattern Jury Instructions, Civil, No. 400.01 (1968).

The jury returned a general verdict in favor of McGregor and against defendants, awarding $750,000 in damages.

Ruan subsequently moved for a directed verdict on its indemnity counterclaim. The trial judge granted Ruan's motion, observing that, as the action predated the Contribution Act (see Ill. Rev. Stat. 1987, ch. 70, par. 301), Ruan could not be liable in light of a finding pursuant to a theory of strict products liability.

This appeal followed.

OPINION

■■ Navistar correctly points out that, to be successful in its indemnity action, Ruan must show the defective condition causing McGregor's injury existed when the truck left Navistar's control (see *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 338 N.E.2d 857), and concedes Ruan may rely on McGregor's proof at trial to do so. Navistar's argument, essentially, however, is that under the rule announced in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, when the evidence is viewed in its aspect most favorable to Navistar, it does not so overwhelmingly favor Ruan as to preclude a contrary verdict.

We must agree.

Initially, we note that inherent in the general verdict rendered, based on the instructions given, is the jury's determination that an insufficiency existed with regard to the "grab handle," the "grab handle fastener system," or "the instructions regarding inspection or torquing of the grab handle fastener system" which constituted a design defect. Logically, we must assume from its finding that the jury also determined Navistar and Ruan each created defects giving rise to liability.

■ Nevertheless, after reviewing testimony in the record in light of the standard stated in *Pedrick*, we do not conclude that Ruan was entitled to a directed verdict. Testimony was presented at trial that, after the truck had been delivered by Navistar to Ruan, the cab of the truck had been painted at Ruan's direction. In the painting process, the particular grab handle screw, the absence of which directly caused McGregor's injury, was loosened. While certain testimony in the record indicates hand tightening the screw might have been sufficient to secure the grab handle, thereby preserving the integrity of the fastening system, there is no testimony that the particular screw involved was so sufficiently tightened even to that extent. We believe an inference therefore exists that, while in Ruan's control, the particular screw may not have been adequately tightened after painting by New Look and that that inference must preclude a directed verdict in Ruan's favor.

Reversed and remanded.

COCCIA, P.J., and GORDON, J., concur.